# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00179-CV

### City of San Angelo Fire Department and Kelly Hood, Appellants

### v.

### Sheila Hudson, Appellee

### FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT NO. C-02-1279-C, HONORABLE BEN WOODWARD, JUDGE PRESIDING

## O P I N I O N

Appellants City of San Angelo Fire Department and Kelly Hood[1] are defending a lawsuit brought by Sheila Hudson alleging personal injury and property damage caused by the operation or use of a motor vehicle by a governmental entity or employee under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. §§101.001-.109 (West 2005). Appellants assert that, because the City and Hood enjoyed sovereign immunity and official immunity, the trial court erred in denying their motions for summary judgment. We will reverse the order of the trial court and render judgment dismissing Hudson's claims.

---

[1] We will refer to the appellants collectively as "appellants" or individually as "the City" or "Hood."

**BACKGROUND**

On August 20, 2002, Hood, a City of San Angelo fire fighter, drove a pumper truck in response to a dispatch report of a strong odor of something burning in a daycare facility with occupants still inside the building. Because he was only a few blocks from the daycare facility and because the other two dispatched engines were coming from a greater distance, Hood anticipated being the first pumper truck on the scene and being responsible for evaluating the scene, evacuating the occupants, and making the initial attack on the fire. Hood contends he proceeded south in the outside lane of Abe Street below the speed limit of 35 miles per hour, with emergency lights and sirens activated and blowing the air horn. He avers that he slowed as he approached the intersection of Abe and Beauregard, looked both ways, observed traffic stopped in all directions, and, believing all east and west traffic was yielding, entered the intersection against the light at around 10 miles per hour.

Hudson entered the intersection at a speed of 25 miles per hour after observing that her light was green.[2] In the intersection, the pumper truck collided with Hudson's vehicle, which then spun around and collided with another vehicle, causing damage to the front and side panels of Hudson's vehicle and to the left and front of the pumper truck's bumper. While the firefighters from Hood's vehicle administered first aid to Hudson, other fire trucks proceeded to the scene of the reported fire.

---

[2] Hudson's affidavit also asserts that she was following another car into the intersection.

2

**DISCUSSION**

Appellants moved for summary judgment, but the district denied appellants' motion. Interlocutory orders, like the order denying summary judgment in this case, typically are not immediately appealable. *Gross v. Innes*, 988 S.W.2d 727, 729 (Tex. 1998). But section 51.014(a) of the civil practice and remedies code allows for interlocutory appeals in certain cases. Tex. Civ. Prac. & Rem. Code § 51.014(a) (West 1997 & Supp. 2004-05); *Gross*, 988 S.W.2d at 729. Specifically, section 51.014(a)(5) provides for interlocutory appeal from an order that denies a motion for summary judgment that is based on an assertion of immunity by a governmental actor. Tex. Civ. Prac. & Rem. Code § 51.014(a)(5). In their motion for summary judgment, appellants asserted that the claims against Hood were barred because Hood had official immunity.

When reviewing the denial of a summary judgment, we apply the same standard used in reviewing the grant of a summary judgment. *El Paso County v. Ontiveros*, 36 S.W.3d 711, 714-15 (Tex. App.—El Paso 2001, no pet.). In a traditional summary judgment motion, the movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). We take as true evidence favorable to the non-movant and resolve all doubts in its favor. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 282 (Tex. 1996); *Harwell v. State Farm Mut. Auto. Ins. Co.,* 896 S.W.2d 170, 173 (Tex. 1995). The movant is entitled to summary judgment if the evidence disproves, as a matter of law, at least one element of each of the plaintiff's causes of action or conclusively establishes each element of an affirmative defense. *Friendswood*, 926 S.W.2d at 282. To establish an affirmative defense, the defendant-movant must present summary judgment evidence

3

that establishes each element of the affirmative defense as a matter of law. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive and direct, otherwise credible and free from contradiction, and could have been readily controverted. Tex. R. Civ. P. 166a(c). If the defendant establishes a right to summary judgment, the burden shifts to the plaintiff to present evidence raising a material fact issue. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

On appeal, appellants raise four issues. However, because we find issues two and three dispositive of the appeal, we do not reach appellants' first and fourth issues.[3] In their second issue, appellants assert that the district court should have granted the City's traditional motion for summary judgment. Appellants contend they conclusively proved that Hood did not violate any applicable law, and, therefore, the City's immunity from suit was not waived. In their third issue, appellants argue that the trial court erred in denying Hood's traditional motion for summary judgment based on official immunity because he conclusively established that he acted in good faith in the performance of discretionary duties within the scope of his employment.

---

[3] In their first issue, appellants argue that the trial court erred in denying City's no-evidence motion for summary judgment. They contend that, because Hudson did not produce more than a scintilla of evidence to establish the vital fact that Hood violated an applicable state or local emergency response law or acted with conscious indifference or reckless disregard, the City's immunity from suit was not waived and that the court, therefore, did not have subject-matter jurisdiction. In their final issue, appellants assert that the City's plea to the jurisdiction regarding Hudson's claim of failure to train or improper training should be granted because the claim does not arise from the operation of a motor vehicle or from the use of tangible or personal property and, therefore, the City's sovereign immunity was not waived.

4

**Sovereign Immunity not Waived**

In their second issue, appellants assert the City's sovereign immunity was not waived. A governmental unit is immune from suit and liability unless the state consents. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Governmental immunity from suit defeats a court's subject-matter jurisdiction. *Id*. Whether a trial court has subject-matter jurisdiction is a question of law we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

"In a suit against a governmental unit, the *plaintiff* must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542 (emphasis added). The Tort Claims Act waives sovereign immunity for damage and injury caused by the wrongful act or omission or negligence of an employee operating or using a motor vehicle within the scope of his employment. Tex. Civ. Prac. & Rem. Code Ann. § 101.021. This waiver does not apply where the claim arises from the action of an employee responding to an emergency call in compliance with applicable laws and ordinances.[4] *Id.* § 101.055(2).

The underlying policy of the emergency response exception is to balance the safety of the public with the need for prompt response from emergency personnel. *City of Amarillo v. Martin*, 971 S.W.2d 426, 429 (Tex. 1998). Imposing liability for a mere failure in judgment could

---

[4] Section 101.055 also states that sovereign immunity is not waived if, in the absence of laws or ordinances governing emergency action, the action is not taken with conscious indifference or reckless disregard for the safety of others. Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2) (West 2005). Because in this case the City of San Angelo Code of Ordinances and the Texas Transportation Code both govern the operation of emergency vehicles in situations like the one present in this case, the conscious indifference or reckless disregard provision of the civil practice and remedies code does not apply. *See id*.

5

deter emergency personnel from acting decisively and from taking calculated risks. *Id.* at 430 (quoting *Saarinen v. Kerr*, 644 N.E.2d 988, 992 (N.Y. 1994)). This would also allow for judicial second guessing of the split-second and time-pressured decisions emergency personnel are forced to make. *See id.* (quoting *Saarinen*, 644 N.E.2d at 992).

The legislature has placed a higher burden upon civilian drivers than upon emergency-vehicle drivers; this burden is justified because emergency-vehicle operators face more exigent circumstances than civilian drivers and because civilian drivers have the advantage of being able to prevent collisions with emergency vehicles due to the emergency vehicles use of sirens and lights and due to the conspicuous coloring of emergency vehicles. *Id.* at 431-32. Emergency responders are entitled to presume other drivers will respect emergency priorities. *Id.* at 432.

To establish the affirmative defense under section 101.055(2) for the purposes of summary judgment, appellants must prove Hood was responding to an emergency call and acted in compliance with the laws applicable to the emergency situation. *See Durham v. Bowie County*, 135 S.W.3d 294, 298 (Tex. App.—Texarkana 2004, pet. denied); *see also City of Galveston v. Whitman*, 919 S.W.2d 929, 931 (Tex. App.—Houston [14th Dist.] 1996, writ denied) (section 101.055(2) requires government to demonstrate compliance with laws and ordinances to prevent waiver of immunity).

The transportation code provides that, in operating an authorized emergency vehicle, a state employee may proceed past a red light after slowing as necessary for safe operation if that operator is responding to but not returning from a fire alarm. Tex. Transp. Code Ann. §§ 546.001, .002 (West 1999 & Supp. 2004-05). Moreover, the operator must use, at his discretion and in

compliance with local government or department policy, appropriate audible or visual signals. *Id*. § 546.003 (West 1999). The transportation code does not relieve emergency-vehicle operators from the duty to exercise appropriate regard for the safety of all persons or from the consequences of reckless disregard for others' safety. *Id*. § 546.005 (West 1999). The action of an emergency-vehicle operator constitutes a reckless disregard for the safety of others when the operator knows or should have known that the action in question posed a high risk of serious injury to others. *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.).

Similarly, the San Angelo Code of Ordinances permits a driver of an authorized emergency vehicle responding to an emergency call or responding to but not returning from a fire alarm to proceed past a red light or stop signal if the driver uses audible signals while in motion as may be reasonably necessary and if the vehicle is equipped with at least one red lighted lamp normally visible from 500 feet, but "only after slowing down as may be necessary for safe operations." San Angelo, Tex., 1959 Code of Ordinances, Sec. 10-3-2 § 10.102(g)(2)(B), (3) (1959). The San Angelo code does not relieve the driver from the duty to drive with due regard for the safety of all persons or protect the driver from the consequences of his reckless disregard for the safety of others. *Id*. § 10.102(g)(4).

The uncontroverted evidence establishes that Hood was responding to an emergency call, and, therefore, appellants have satisfied the first requirement for the claimed affirmative defense. We now turn to whether appellants have conclusively established that Hood's response complied with the applicable laws and ordinances.

7

In his affidavit, Hood stated that he was driving below the speed limit, that he significantly slowed as he was reaching the intersection, that he looked in both directions and observed that traffic had yielded to him before going through the intersection, and that his speed when going through the intersection was, at maximum, ten miles per hour. Further, Hood stated that, because the traffic had yielded to him, he concluded it was best to move slowly through the intersection rather than coming to a complete stop because he would lose precious time as the truck takes a great deal of time to accelerate after stopping completely. Hood also stated in a deposition that he had his foot on the brake when proceeding through the intersection and applied his brake harder when he observed Hudson's car heading towards the intersection.

In addition, Hood stated that the siren and lights were activated and that another firefighter was sounding the air horn as the truck approached the intersection. Although Hudson asserts she did not see or hear the truck, witnesses and the police report indicate that the lights, sirens, and air horn were used. One driver stated in an affidavit that, after hearing the fire truck, he stopped prior to entering the intersection and observed that traffic had stopped to yield to the fire truck. The witness also stated that the fire truck did not appear to be speeding.

We hold that appellants have conclusively demonstrated that Hood complied with the applicable statutes and ordinances as a matter of law. *See Smith*, 126 S.W.3d at 545-46 (holding ambulance driver not reckless as matter of law under emergency response exception after demonstrating that he responded to emergency situation, that he activated ambulance's lights and siren, that he slowed when approaching intersection and observed drivers yielding to ambulance, and that he proceeded through intersection without coming to complete stop). Accordingly, the burden

8

shifts to Hudson to raise a genuine issue of material fact regarding Hood's compliance with the applicable statutes and ordinances. *See id.*

Although admitting in her deposition that she did not know whether the fire truck slowed because she did not see it, Hudson points to two witness affidavits as proof that Hood failed to follow applicable laws and ordinances and that he acted in conscious indifference or reckless disregard for the safety of others.[5] Hudson also alleges that the damage to her vehicle and to the fire truck suggest Hood was speeding when he entered the intersection.

The affidavit of John David Brunson, a witness to the accident, indicates that the fire truck "entered the intersection from the outside lane without stopping" and that "I [Brunson] did not hear the fire truck put on its brakes." The affidavit of April Harrington, another witness, stated that three other emergency vehicles had gone through the intersection five minutes before Hood drove through the intersection so "I [Harrington] don't understand why this fire truck had to rush[,]" that "the fire truck slammed into the red car full force," and that "the fire truck did not use its brakes at all when entering the intersection."[6]

---

[5] Hudson also argues that the affidavits indicate that she did not stop or alter her lane of travel as she entered the intersection. This evidence, which may show that Hudson did not realize Hood was entering the intersection against the light, is irrelevant to our determination of whether there is a fact issue regarding whether Hood slowed as necessary for safe operation before proceeding through a red light.

[6] Appellants request that we reverse the trial court's order declining to strike that portion of Harrington's affidavit containing the statement that the fire truck did not brake at all because it was conclusory and did not provide any underlying facts to support the question. *See* Tex. R. Civ. P. 166a(f) (to be competent summary judgment evidence, affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and affirmatively show that affiant is competent to testify to matters stated therein). Because the affidavit does not indicate how Harrington made the assessment that the fire truck did not use its brakes at all when entering the intersection, we agree that the conclusory statement is not competent summary judgment evidence

9

Neither affidavit raises a fact issue that Hood did not slow as necessary before proceeding through an intersection with a red light or acted with reckless disregard for the safety of others. Brunson's observations—that Hood "entered the intersection . . . without stopping" and that Brunson "did not hear" brakes being applied—are not evidence of reckless disregard for the safety of others, nor are they evidence Hood did not slow as necessary for safe operation. That an automobile enters an intersection without stopping could be as true of an automobile traveling at one mile per hour as one traveling at sixty miles per hour. Merely stating the truck entered the intersection without stopping is not evidence of recklessness or conscious indifference without an indication of other observations describing the circumstances or conditions that made the action reckless or consciously indifferent. Similarly, the fact that Brunson did not *hear* the truck brake does not address whether the driver slowed as necessary or acted with reckless disregard for the safety of others. That one does not "hear" brakes does not establish that slowing did not occur prior to Hood entering the intersection.

Harrington's conclusory observation that the large pumper truck "slammed" into Hudson's car "full force" does not provide evidence raising a fact issue about Hood's regard for the safety of others or whether he slowed as necessary. The statement does not describe the conditions under which the collision occurred and does not describe the speed of either vehicle. Similarly, Harrington's statement that she did not understand why the fire truck needed to rush because she had seen other emergency vehicles pass through the intersection does not indicate whether Hood slowed

and strike it. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

as necessary or acted with disregard for the safety of others. Hood was responding to an emergency, believed his vehicle would be the first to arrive due to its proximity to the emergency, and was unaware that other emergency vehicles had responded to the situation. Hood demonstrated that, under the circumstances as he understood them to be, there was a need to proceed through the intersection without stopping.

Finally, given the apparent substantial difference in weight between the truck and Hudson's car, Hudson's evidence of damage to the fire truck and to her car, without more, is not enough to overcome the evidence Hood offered to prove he complied with the applicable statutes and ordinances. There is no evidence or expert testimony estimating the speed of the vehicles prior to the collision based on the amount of damage each vehicle sustained.

The summary judgment evidence conclusively establishes that Hudson's claim arises from Hood's response to an emergency call and that Hood's action was in compliance with the laws and ordinances applicable to the emergency action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2). Consequently, the waiver of sovereign immunity does not apply. Accordingly, we sustain appellants' second issue and will reverse the summary judgment and render judgment dismissing Hudson's suit against the City for lack of subject-matter jurisdiction.

**Official Immunity**

Appellants argue in their third issue that the trial court erred in denying Hood's motion for summary judgment based upon official immunity, claiming that he produced competent summary judgment evidence establishing that he acted in good faith in the performance of his discretionary duties within the scope of his authority and that Hudson failed to establish that no

11

reasonable person in Hood's position could have thought that the facts justified his action.[7] Hudson responds that Hood is not entitled to official immunity because he was not performing discretionary duties and because he was not acting in good faith.

Official immunity is an affirmative defense that shields public employees from personal liability in a suit arising from an employee's good faith performance of discretionary duties performed within the scope of his authority. *See University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000); *Wadewitz v. Montgomery*, 951 S.W.2d 464, 465-66 (Tex. 1997); *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). As Hudson does not argue that Hood was not acting

---

[7] Our sister court would end the inquiry upon deciding that the governmental entity enjoyed sovereign immunity. *Smith v. Janda*, 126 S.W.3d 543, 546 (Tex. App.—San Antonio 2003, no pet.) In making this determination, the court in *Janda* cited to former section 101.106 of the civil practice and remedies code, which applies to this case because it was filed in 2002. *Id.*; *see also Harris County v. Sykes,* 136 S.W.3d 635, 640 n.3 (Tex. 2004) (101.106 amended in 2003 and amended version applies to actions filed after September 1, 2003). Former section 101.106 provided:

> A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim.

Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305 (amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.03, sec. 101.106, 2003 Tex. Gen. Laws 885, 886).

The supreme court has construed former section 101.106 as barring a claim against an employee of a governmental unit when judgment is rendered regarding the employer, regardless of whether the judgment was for or against the employer. *See Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1997); *Newman v. Obersteller,* 960 S.W.2d 621, 622 (Tex. 1997). However, because this issue was not raised on appeal or in the appellants' summary judgment motion, we will address both sovereign immunity and official immunity as raised in the parties' briefs. *Cf. Bossley*, 968 S.W.2d at 343; *Newman*, 960 S.W.2d at 622 (in both cases, immunity from suit under section 101.106 raised in summary judgment).

within the scope of his authority, we now determine whether Hood was performing discretionary duties in good faith.

*Discretionary Duties*

Hood argues that he conclusively proved he was performing a discretionary act in responding to the report of the fire. Actions that involve personal deliberation, decision, and judgment are discretionary; actions that require obedience to orders or the performance of a duty to which the actor had no choice are ministerial. *Chambers*, 883 S.W.2d at 654; *see also Eakle v. Texas Dep't of Human Servs.*, 815 S.W.2d 869, 873 (Tex. App.—Austin 1991, writ denied) (discretion means "power to chose among alternatives within legal bounds"). *Chambers* held that police officers engaging in a high-speed chase was a discretionary act because they had to elect whether to undertake pursuit, choose a route, choose speed and following distance, and decide whether to call for backup. *Chambers,* 883 S.W.2d at 655. The Fourteenth District Court of Appeals has held that "operation of an emergency vehicle in an emergency situation is a discretionary duty." *City of Houston v. Flaniken*, 108 S.W.3d 555, 557 (Tex. App.—Houston [14th Dist.] 2003, no writ). *Flaniken* cited another Houston case, *Rivas v. City of Houston*, 17 S.W.3d 23, 29 (Tex. App.—Houston [14th Dist.] 2000, writ denied), which held that a paramedic's or emergency medical technician's decisions concerning how to transport a person to a medical facility is discretionary despite arguments that the driver was merely driving when the accident occurred and was required to use lights and a siren. *Id.*

Here, Hudson argues that Hood was not performing a discretionary function in responding to the call because he did not choose whether to respond to the call, because lights and

sirens were mandatory, and because he knew the quickest way to the scene and was therefore the lead vehicle. Although we recognize that driving a fire truck in an emergency situation presents different challenges than engaging in high-speed pursuit or transporting a combative patient to medical care, we do not believe that the distinction is dispositive on the issue of whether Hood could have been performing discretionary acts in this case. Rather, we must determine whether Hood's actions involved personal deliberation, decision, and judgment. *Chambers*, 883 S.W.2d at 654.

Hood presented uncontroverted evidence that he was responding to an emergency call and that he believed he would be the first pumper truck to arrive. Hood averred that he led the other fire truck because he knew the location and potential route best and that he determined the best and quickest route. Hood's affidavit indicated that he decided to travel well below the speed limit, although he did not have a duty to do so, after having evaluated the traffic concentration and chosen to drive in the westernmost lane in order to best reach the scene of the fire. Hood gave his reasons for deciding to proceed through the red light and for the speed at which he chose to enter the intersection and outlined his decisionmaking process: "I determined that the extremely urgent need to get to the scene as quickly as possible, significantly outweighed the risk that another vehicle would not hear or see the emergency signals or see that all other traffic was stopped." He stated that he believed most other emergency vehicle operators would have made the same decision. Hood's expert, Fire Chief Alexander Rodriguez, agreed in his affidavit that Hood's perceptions and beliefs were reasonable and that he appropriately weighed his alternatives and balanced needs and risks.

The evidence demonstrates that Hood's actions involved personal deliberation, decisions, and judgment. The affidavits evaluate a string of choices and the wisdom of Hood's

14

judgments, not whether he was correctly performing a ministerial duty about which he had no choice. *See Chambers*, 883 S.W.2d at 654. Hudson did not offer evidence that Hood was merely performing a ministerial duty. We therefore hold that Hood conclusively proved he was performing a discretionary function at the time of the accident.

*Good Faith*

Hood argues that he also conclusively proved that he acted in good faith for purposes of establishing official immunity. A city employee acts in good faith if a reasonably prudent employee could have believed that his acts were justified. *Chambers*, 883 S.W.2d at 656. To prevail on the good faith element of official immunity, the government must show how a reasonably prudent employee, based on the employee's perception of the facts at the time of the event, could have assessed the need to which the employee responds and the risks of the actions taken and believed that the need outweighed the risk involved. *See Wadewitz*, 951 S.W.2d at 467; *Chambers*, 883 S.W.2d at 656. Expert testimony regarding good faith will support summary judgment only if it is not conclusory; it is clear, positive, direct, otherwise credible, and free from contradictions and inconsistencies; and it could have been readily controverted. *Wadewitz*, 951 S.W.2d at 466. It must address whether a reasonably prudent employee could have believed under the circumstances that the need outweighed the risk of the actions taken and must substantiate its conclusions with reference to the need and risk involved. *See id*. at 467 (citing *Chambers*, 883 S.W.2d at 656-57).

The "need" prong of this test refers to the urgency of the circumstances. *Id*. Hood avers that, because he reasonably anticipated being the first truck on the scene and because his

information from dispatch was that a structure fire occurred at a women's and children's home or daycare facility and that an unknown number of children and adults were still in the building, he believed it was extremely urgent that he reach the scene as quickly as possible and that his immediate presence was necessary to prevent injury or death. Hood repeated these concerns about the level of need in discussing his decision-making process regarding entering the intersection against the light without stopping and opined that most other emergency vehicle drivers would agree that the urgent need to arrive and evacuate children from a fire at a day care center outweighed the risk involved. Hood's expert, Rodriguez, agreed. Rodriguez reviewed the information Hood had at the time, including the lack of information on how many children needed to be evacuated and Hood's position as lead vehicle,[8] and opined that Hood "properly and reasonably assessed the urgent need to immediately reach a reported structure fire where children were present in order to prevent injury or loss of life, [and] that he weighed the alternatives available, whether to stop . . . and lose . . . time in re-accelerating or . . . proceed through the intersection." Hudson cites evidence that Hood could have missed her car had he arrived a few seconds later[9] and that another fire truck and two ambulances were already at the scene to show that the need was not great. However, she does not contradict Hood's and Rodriguez's affidavits indicating that a reasonable officer or employee could have believed the need was compelling under the circumstances.

---

[8] Although two other engines were dispatched to the scene, Rodriguez opined that it was reasonable for Hood to believe he would arrive first because the other two were coming from a fire station farther away than Hood's.

[9] Hudson's theory appears to be that, had Hood come to a complete stop, he would have entered the intersection a few seconds later and necessarily missed her car.

The "risk" prong of the good faith test refers to any countervailing public safety concerns such as the nature and severity of the harm that could occur, including injuries to bystanders or an accident preventing him from reaching the emergency and whether any risk of harm would be clear to a reasonably prudent employee. *Id*. In *Wadewitz*, the summary judgment evidence was insufficient to establish good faith because it failed to address the degree, likelihood, and obviousness of the risks Wadewitz created. *Id*. Hudson argues that in this case Hood's expert makes only conclusory statements and fails to assess the degree, likelihood, or obviousness of the risks Hood's actions created.

We disagree with Hudson's assertions. Hood's affidavit lists and analyzes the actual risks he considered and weighed against the perceived need. These included awareness that the light remained red as he approached the intersection; that there was congested traffic along his route; that a vehicle might not yield or might not note the emergency lights, siren, and air horn; and that a collision might prevent him from timely reaching the scene. His affidavit shows that he considered the risks, looked for traffic that might pose a danger, and weighed the risks and need before proceeding through the light. Rodriguez's affidavit discusses the circumstances as Hood perceived them and concludes that Hood believed that the risk was minimal because he had seen traffic stopped in all directions and because he had slowed to further reduce the risk of serious injury. Given these factors involving the likelihood and severity of the risk, Rodriguez goes on to opine that Hood balanced the need against the risk and to explain the basis for this opinion: "because he observed and perceived that traffic had stopped in both directions and further because he felt his low speed would

17

minimize the risk" and severity of a collision.[10]  Because Hood and his expert took both sides of the *Chambers* good faith balancing test into account, we hold that the requisite basis existed for concluding that a reasonable fire truck driver in Hood's position could have believed that his actions were justified.  *See Hale v. Pena*, 991 S.W.2d 942, 946 (Tex. App.—Fort Worth 1999, no pet.) (affidavits must take both need and risk factors into account in order to show basis for concluding officer acted in good faith).[11]

Hudson argues that the unreasonableness of Hood's actions is demonstrated by Hood's admission that he knew there were risks because the intersection was busy, that there is a constant concern that drivers might not hear or see his lights and sirens, and that traffic could not have been stopped as Hood believed because he, in fact, collided with Hudson's car as it proceeded through the intersection.  We do not agree that the evaluation of risks in Hood's affidavit indicates that his action was necessarily unreasonable or that Hood's inaccurate perception necessarily renders it unreasonable for him to have believed that all traffic was stopped based upon his knowledge at the time.  If this were so, any admission that a risk existed would defeat the element of good faith, and

---

[10]  In fact, Hood indicated in his affidavit that he was able to prevent worse harm because his low speed enabled him to brake quickly upon seeing Hudson enter the intersection and that he believed he had almost come to a stop by the time he struck her car.

[11]  Hudson argues that, because of similarities in facts such as the type of accident, positioning and damages to the vehicles, and perceptions of the officer, the fact that the officer in *Hale* was not entitled to summary judgment on official immunity makes summary judgment similarly inappropriate in this case.  *See Hale v. Pena*, 991 S.W.2d 942, 945-46 (Tex. App.—Fort Worth 1999, no pet.).  Although *Hale* was factually similar, the opinion makes it clear that the *Hale* defendant was not entitled to summary judgment because the affidavits offered to show good faith did not analyze risk as required by *Chambers*.  *See id*. at 946.  Unlike Hood, "Officer Hale had no knowledge of the underlying facts about the emergency alarm, the seriousness of the crime, or whether his immediate presence was necessary, even though it was a 'priority one' dispatch."  *Id*.

18

any collision would be adequate evidence that a reasonable employee would have assessed the risk differently, thereby vitiating the doctrine of official immunity in most or all cases. Official immunity is designed to encourage emergency personnel to take reasonably calculated risks when they have properly considered need and risk, not to punish them for having done so.

Given the evidence of need and risk, we hold that appellants have established that a reasonably prudent employee under the same or similar circumstances would have believed that proceeding through the intersection despite the red light was justified and that Hood acted in good faith. *Wadewitz*, 951 S.W.2d at 467; *Chambers*, 883 S.W.2d at 656-57; *see Hale,* 991 S.W.2d at 946 (summary judgment evidence must establish that reasonably prudent officer would have taken same act to prove good faith). Having held that appellants conclusively established that Hood was performing discretionary acts in good faith within the scope of his employment, we hold that he was entitled to summary judgment on the affirmative defense of official immunity. *See Clark*, 38 S.W.3d at 580 (describing affirmative defense); *Friendswood Dev. Co.*, 926 S.W.2d at 282 (entitlement to summary judgment).

Accordingly, we reverse the order of the district court denying summary judgment to Hood on the affirmative defense of official immunity and render judgment granting Hood's motion.

### CONCLUSION

Having determined that sovereign immunity shields the City of San Angelo from suit, we dismiss Hudson's claims against it for want of jurisdiction. Having determined that official

immunity shields Hood from Hudson's claims against him, we reverse the order of the district court and render judgment granting summary judgment in his favor.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear;
    Justice Kidd Not Participating

Dismissed for Want of Jurisdiction in Part; Reversed and Rendered in Part

Filed:   November 3, 2005