**Reversed and Remanded and Memorandum Opinion filed December 21, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00811-CV

## MARIA CHRISTINA GOMEZ, Appellant

### V.

## THE CITY OF HOUSTON, Appellee

**On Appeal from the 333rd District Court
Harris County, Texas
Trial Court Cause No. 2013-59953**

## M E M O R A N D U M    O P I N I O N

Appellant Maria Christina Gomez was involved in a traffic collision with Bobby Joe Simmons, a police officer employed by appellee, the City of Houston. Officer Simmons was one of several officers responding to the scene of an in-progress robbery when the collision occurred. Gomez sued the City, alleging negligence. The City responded by filing a plea to the jurisdiction asserting that it was immune from Gomez's suit. The trial court granted the plea and dismissed

Gomez's suit.

Gomez raises two issues in this appeal asserting that the trial court erred when it granted the City of Houston's plea. We sustain Gomez's issues because there are material fact issues on whether Officer Simmons acted in good faith as required for official immunity, as well as whether Officer Simmons' actions demonstrated a conscious indifference to, or reckless disregard for, the safety of others. Because we sustain Gomez's issues on appeal, we reverse the trial court's judgment dismissing her claims and remand the case to the trial court for further proceedings.

## BACKGROUND

Gomez was driving eastbound on Crosstimbers Road on a cold and rainy Christmas Eve morning. The signal light turned green as Gomez approached the Lockwood intersection. As Gomez drove into the intersection, a City of Houston police car driven by Officer Simmons slid into the intersection, where it collided with Gomez's vehicle. According to Gomez, Simmons was not using the police car's emergency lights or siren when he collided with her car.

Officer Simmons was on patrol when he was dispatched to respond to a nearby armed robbery in progress. According to Simmons, an armed robbery is normally a Priority One call, but dispatch reduced this call to Priority Two due to the weather conditions. Simmons testified that as he responded to the robbery, he turned on his emergency lights but not his siren. Simmons explained that the Houston Police Department's policy for Priority Two calls normally requires a silent approach. Simmons further explained that an officer retains the discretion to use the emergency lights and siren on a Priority Two call when the officer deems it necessary and notifies the dispatcher. Simmons decided that he did not need to exceed the posted speed limit of 35 miles per hour to arrive safely and quickly at the robbery scene. As Officer Simmons drove toward the Crosstimbers intersection, he was aware that

it had a quick signal light. As his patrol car approached the intersection, Officer Simmons looked down to increase the volume of his police radio. When Officer Simmons looked up, he was startled to see that the Crosstimbers traffic light had turned yellow. Officer Simmons pressed his brakes, but he was unable to stop his police car on the wet street, and the car slid into the intersection, where it collided with Gomez's vehicle.

Houston police officer Isaac Jefferson investigated the collision and subsequently prepared the investigation report. Officer Jefferson noted in his report, among other things, that Officer Simmons was responding to a robbery when the collision occurred. Officer Jefferson also stated in his report that Officer Simmons was driving south on Lockwood without his emergency lights or siren engaged when the signal light changed from green to yellow. Officer Jefferson then stated that Officer Simmons "applied his brakes but because the roads were wet he was unable to stop." Finally, Officer Jefferson determined that Officer Simmons disregarded a stop and go signal and was therefore at fault in the collision.

During his deposition, Officer Simmons testified that he received a letter of reprimand as a result of the collision. The reprimand letter notified him that he was at fault in the collision. Officer Simmons also testified that he did not contest the fault determination because he previously had admitted fault in the collision.

Officer Jefferson prepared an affidavit in this case, much of which duplicates the affidavit prepared by Officer Simmons. Like Officer Simmons, Officer Jefferson states in his affidavit that "Officer Simmons' emergency lights and car headlights were on throughout this time." Officer Jefferson then opined that "based on all the facts stated above, another reasonably prudent law enforcement officer, including myself, under the same or similar circumstances could have believed that the need to quickly reach the incident scene outweighed any minimal risk of harm to others

3

and that all of Officer Simmons' decisions and actions before the accident were justified and reasonable based on his perception of the facts at the time." Finally, Officer Jefferson concluded that "based on all the facts stated above, Officer Simmons should not have known or believed that his driving to reach the armed robbery in progress and then to assist in pursuing the suspect posed a high degree of risk of serious injury to others and that there is no way Officer Simmons did not care about the results of any risk of injury to others."

Gomez eventually filed suit against the City of Houston. The City filed a plea to the jurisdiction asserting that the trial court lacked jurisdiction over the claims because the City had not waived its governmental immunity. The City made two arguments in its plea to the jurisdiction. First, the City asserted that Officer Simmons was protected by official immunity, which preserved the City's governmental immunity. Second, the City argued that it was immune because the emergency exception in the Texas Tort Claims Act (TTCA) barred any possible waiver of its governmental immunity. The trial court granted the City's plea and dismissed Gomez's lawsuit. This appeal followed.

## ANALYSIS

### I.  Standard of review

We review a trial court's ruling on a plea to the jurisdiction de novo. *City of Pasadena v. Belle*, 297 S.W.3d 525, 528 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004)). A defendant's plea may challenge either the plaintiffs' pleadings or the existence of jurisdictional facts. *Id.* When, as here, the governmental entity challenges the existence of jurisdictional facts, we must consider the relevant evidence submitted by the parties. *Id.* If that evidence raises a fact issue as to jurisdiction, the governmental entity's plea must be denied because the issue must

4

be resolved by the trier of fact. *Id.* If the relevant evidence is undisputed or fails to present a jurisdictional fact issue, however, the court should rule on the plea as a matter of law. *Id.* The standard of review for a plea to the jurisdiction based on evidence generally mirrors that of a motion for summary judgment. *Quested v. City of Houston*, 440 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We therefore must credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.*

## II. Because there is a material fact issue whether Officer Simmons acted in good faith, the City did not conclusively establish official immunity.

The City of Houston, as a municipality and political subdivision of the State, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *Belle*, 297 S.W.3d at 529 (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex. 1994)). Under the facts of this case, the only possible waiver of the City's immunity from suit and liability is found in section 101.021 of the TTCA, which provides in relevant part:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A)  the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>
> (B)  the employee would be personally liable to the claimant according to Texas law . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1) (West 2011).

The parties agree Gomez's claims arise from the use of a motor vehicle. They also agree that Officer Simmons was acting within the scope of his employment when he responded to the dispatcher's call regarding an armed robbery. One of the

5

two matters the parties dispute, which we address here, is whether Officer Simmons could "be personally liable to the claimant[s] under Texas law." A second dispute, which we address in Part III below, is whether an exception to the section 101.021 waiver applies.

The City contends the evidence conclusively establishes that Officer Simmons retained his official immunity because he responded to the robbery call in good faith. According to the City, Officer Simmons could not therefore be personally liable to Gomez according to Texas law, and the City retains its governmental immunity. In her first issue on appeal, Simmons argues there is a fact issue regarding good faith.

Official immunity is an affirmative defense, and therefore the burden rests on the City of Houston to establish all elements of the defense. *See Belle*, 297 S.W.3d at 530; *see Green v. Alford*, 274 S.W.3d 5, 16 n.11 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (en banc). Under the official-immunity defense, a government employee may be immune from a lawsuit that (1) arises from the performance of discretionary duties, (2) performed in good faith, (3) provided the employee was acting in the course and scope of his authority. *Belle*, 297 S.W.3d at 530. As explained above, only good faith is in dispute.

In this context, "good faith" is defined as a standard of objective legal reasonableness that disregards the police officer's subjective state of mind. *Belle*, 297 S.W.3d at 530 (citing *Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997)). The governmental defendant has the burden to prove conclusively that a reasonably prudent police officer, under the same or similar circumstances, could have believed his actions were justified based on the information he possessed at the time. *Id.*; *City of Lancaster*, 883 S.W.2d at 656–57. To rebut a governmental defendant's showing of good faith, a plaintiff must show that no reasonable person in the police officer's position could have thought the facts were such that they

justified the officer's actions. *Id.*

The good-faith standard of reasonableness weighs the *need* for the officer's actions against the *risks* entailed by such conduct based on the officer's perception of the facts at the time of the event. *Wadewitz*, 951 S.W.2d at 467. The need aspect of the balancing test refers to the urgency of the circumstances requiring police intervention and requires an evaluation of the following factors: (1) the seriousness of the crime or accident to which the officer is responding; (2) whether the officer's immediate presence is necessary to prevent injury or loss of life or to apprehend a suspect; and (3) what alternative courses of action, if any, are available to achieve a comparable result. *Id.* The risk aspect refers to the countervailing public safety concerns and requires an evaluation of the following factors: (1) the nature and severity of the harm the officer's actions could cause (including injuries to bystanders as well as the possibility that the officer may not reach the scene of the original emergency); (2) the likelihood that any harm would occur; and (3) whether the risk of harm would be clear to a reasonably prudent officer. *Id.*

To prevail, a governmental defendant's proof must sufficiently address these need/risk factors. *Telthorster v. Tennell*, 92 S.W.3d 457, 462 (Tex. 2002). An expert giving testimony regarding good faith must discuss what a reasonable officer could have believed based on the officer's perception of the facts at the time of the event, and this discussion must be substantiated with reference to both the need and risk aspects of the balancing test. *Belle*, 297 S.W.3d at 531 (citing *Wadewitz*, 951 S.W.2d at 466–67). In addition, the facts of the case may require the expert to provide a continuing assessment of the need and risk factors because emergency responses and police pursuits may involve rapidly changing circumstances. *Id.* (citing *University of Houston v. Clark*, 38 S.W.3d 578, 582–83 (Tex. 2000)). A reviewing court analyzing these factors first must determine whether the governmental unit met its

initial burden to prove conclusively the police officer's good faith. Only when it has been determined that the governmental unit met this burden does the court address whether the nonmovant's evidence raises a genuine issue of material fact on the issue of good faith. *Id.*

We turn first to the question whether the City of Houston met its initial burden to prove conclusively Officer Simmons' good faith. As this Court has held, an opinion that a police officer acted in good faith does not conclusively establish good faith when the opinion is reached "by assuming the truth of disputed facts . . . and by failing to consider other uncontroverted facts." *Green*, 274 S.W.3d at 20. In this case, the City of Houston's evidence of good faith contains both flaws.

As to uncontroverted facts, there is no dispute that it was a rainy day and the streets were wet. There is also no dispute that Officer Simmons had the discretion on a Priority Two call to use both his emergency lights and his siren if he deemed it necessary. Even though Officer Simmons possessed the discretion to use his siren, it is undisputed that he did not do so at any time before the collision. Finally, it is not disputed that Officer Simmons (1) looked down to change the volume of his police radio as he approached the Crosstimbers intersection, (2) knew the intersection had a quick light, and (3) was startled when he looked up to see the signal light had changed to yellow. When faced with "an official traffic-control device," a motorist is required to stop and "may proceed when the intersection can be safely entered without interference or collision with traffic using a different street or roadway." Tex. Transp. Code Ann. § 545.151(a)(2) (West 2011). Police officers are authorized to violate traffic laws in certain circumstances, but they may do so only when it is safe. *See id.* § 546.001(2) (authorizing police officer to "proceed past a red or stop signal or stop sign, after slowing as necessary for safe operation."); *City of Brazoria v. Ellis*, No. 14-14-00322-CV, 2015 WL 3424732, at *5 (Tex.

8

App.—Houston [14th Dist.] May 28, 2015, no pet.) (mem. op.).

The changing circumstances faced by a police officer responding to an emergency call require a continuing assessment of the need and risk factors. *Belle*, 297 S.W.3d at 531; *see also Clark*, 38 S.W.3d at 582–83; *Green*, 274 S.W.3d at 18–20 (addressing intersection where accident occurred as part of need/risk analysis); *Harris Cnty. v. Smyly*, 130 S.W.3d 330, 335 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("an officer is required to assess the specific circumstances present that affect any risks"). One of the need factors is alternative courses of action that are available to achieve a comparable result. *Belle*, 297 S.W.3d at 532. Additionally, one of the risk factors is the harm that a police officer's actions might cause, including the possibility that the officer may not reach the scene of the original emergency. *Wadewitz*, 951 S.W.2d at 467.

Officer Simmons and Officer Jefferson, the City of Houston's experts, failed to consider how the need and risk factors were affected by these undisputed facts: the wet street conditions; the impact, if any, the wet weather has on a police officer's response to a Priority Two call, such as whether to use his patrol car's siren; and the advisability of looking down and away from the road as the officer drives toward an intersection the officer knows to have a quick light. The City's evidence does not conclusively prove objective good faith because it does not address the "degree, likelihood, and obviousness of the risks created by" Officer Simmons' decisions to not reduce his speed due to the wet street conditions,[1] to not use his siren, and to look down and away from the road when he approached an intersection he knew had a quick light. *See Wadewitz*, 951 S.W.2d at 466–67 (holding evidence that failed to

---

[1] Although Officer Simmons stated in his affidavit that he determined he did not need to drive faster than the posted speed limit while responding to the robbery call, there is no evidence in our record that he considered whether the wet conditions required him to slow to a speed below the posted limit to ensure safe travel to the robbery scene.

9

address risk of crossing lane obscured by truck did not provide basis for concluding that reasonable officer could have believed actions were justified). Officer Jefferson also did not address the extent to which alternative actions—such as Officer Simmons slowing the speed of his police car below the posted speed limit to compensate for the wet streets and maintaining visual contact with the approaching intersection—might have impacted Officer Simmons' ability to respond timely to the armed-robbery call. *See Belle*, 297 S.W.3d at 534 (holding evidence did not conclusively demonstrate good faith where it failed to address availability of alternative manner of response).

Officer Jefferson instead simply repeated in his own affidavit Officer Simmons' statements regarding the actions leading up to the collision. In doing so, Officer Jefferson ignored his own investigation report on the collision as well as the requirement that an expert witness must base expert opinions on the reality of the situation facing the police officer. *See Collins v. City of Houston*, 14-13-00533-CV, 2014 WL 3051231, at *6 (Tex. App.—Houston [14th Dist.] July 3, 2014, no pet.) (mem. op.) (holding city failed to establish conclusively that police officer acted in good faith because expert witnesses did not offer opinions based on specific circumstances officer faced). On this record, therefore, the City of Houston failed to establish conclusively that Officer Simmons acted in good faith when he drove toward the Crosstimbers intersection. *See Green*, 274 S.W.3d at 20 (holding governmental entity failed to conclusively prove good faith because fire truck driver drove fire truck into intersection even though he was not wearing required corrective lenses, did not use siren or horn, and driver could not see crossing lane of traffic).

The City of Houston's evidence of good faith is also inconclusive because it assumes the truth of the disputed fact that Officer Simmons was using his emergency lights as he approached the Crosstimbers intersection. Officer Simmons testified

that he used his emergency lights continuously from the beginning of his response to the armed robbery call, but there was other evidence in the record that he did not. This evidence includes Gomez's affidavit testimony that Officer Simmons was not using his emergency lights or his siren. The evidence also includes Officer Jefferson's determination in his investigation report that Officer Simmons was not using his emergency lights or siren prior to the collision. It is also disputed whether the Crosstimbers signal light that Officer Simmons faced remained yellow or had already had turned red before his patrol car slid into the intersection.

The record includes Officer Jefferson's affidavit in which he concludes Officer Simmons acted in good faith. Officer Jefferson based his conclusion, in part, on his belief that Officer Simmons was using the emergency lights up to the moment of the collision, as well as his belief that the Crosstimbers signal light was yellow, not red. Officer Jefferson did not form his good-faith opinion based on a need-versus-risk analysis under the alternative scenarios that (1) Officer Simmons was not using his emergency lights as he approached the Crosstimbers intersection, and (2) the Crosstimbers' signal light facing Officer Simmons had turned red before he entered the intersection. Because the City of Houston's expert did not consider these alternative scenarios, and there is evidence in the record supporting them, we conclude the City did not demonstrate conclusively that Officer Simmons acted in good faith. *See Smyly*, 130 S.W.3d at 335 ("When material facts underlying an officer's claim of good faith are contradicted, a conclusive finding of good faith is precluded and summary judgment is improper."); *see also City of Brazoria*, 2015 WL 3424732, at *6 (holding governmental entity did not establish good faith in part because experts accepted truth of disputed facts); *Collins*, 2014 WL 3051231, at *6 (holding opinions failed to establish good faith because they "relie[d] on assumptions that are not supported by the record"); *Junemann v. Harris Cnty.*, 84

S.W.3d 689, 694–95 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that when officer's failure to activate lights was disputed, testimony that did not evaluate risks associated with failure to activate lights was insufficient to establish good faith conclusively).[2]

Because the City did not conclusively establish Officer Simmons' good faith, we hold the trial court erred to the extent it granted the City's plea to the jurisdiction on the ground that the City's governmental immunity had not been waived under section 101.021. We sustain Gomez's first issue.

## III. There is a material fact issue on whether the emergency exception to the TTCA's waiver of immunity applies.

In her second issue, Gomez contends that the trial court erred to the extent it granted the City of Houston's plea to the jurisdiction based on the emergency exception to section 101.021's waiver of immunity. In response, the City argues that the exception applies because it established as a matter of law that Officer Simmons did not act recklessly. We disagree with the City's position because there is a material question of fact regarding whether Officer Simmons acted recklessly or with conscious indifference to the safety of others.

The TTCA includes a subchapter entitled "Exceptions and Exclusions" that lists circumstances in which a waiver of immunity does not apply. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 671–72 (Tex. 2006). One of the exceptions addresses emergency situations. This exception provides that the TTCA "does not

---

[2] *Cf. City of San Angelo v. Hudson*, 179 S.W.3d 695, 700–01 (Tex. App.—Austin 2005, no pet.) (holding good faith conclusively proven where undisputed evidence established fire truck was using emergency lights, siren, and air horn as it approached intersection and driver testified he was driving below speed limit and considered stopping at intersection but, after looking both ways and observing that traffic had yielded to his fire truck and evaluating need for a prompt response to emergency, decided not to stop completely but instead to slow down significantly before entering intersection).

apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others . . . ." Tex. Civ. Prac. & Rem. Code Ann. § 101.055(2) (West 2011).

The law applicable here is section 546.005 of the Texas Transportation Code, which provides that a driver of an emergency vehicle is not relieved of "the consequences of reckless disregard for the safety of others." *Smith v. Janda*, 126 S.W.3d 543, 545 (Tex. App.—San Antonio 2003, no pet.) (quoting Tex. Transp. Code Ann. § 546.005). Therefore, a governmental entity is immune from suits to recover damages resulting from the emergency operation of an emergency vehicle unless the operator of the vehicle acted recklessly by an act or omission the operator knew or should have known posed a high degree of risk of serious injury. *Green*, 274 S.W.3d at 22. The plaintiff has the burden of presenting some evidence that the emergency exception does not apply. *Quested*, 440 S.W.3d at 284.

Here, Officer Simmons' affidavit shows that he subjectively was aware of the risks created when a police officer responds to an emergency call for service.[3] Officer Simmons also was aware of the rainy weather and wet streets, but he did not reduce his speed below the posted limit to compensate. The evidence also demonstrates that Officer Simmons knew the Crosstimbers intersection had a quick light, but he chose to look down and away from the road as he approached the intersection. Officer Simmons decided to not use his patrol car's siren, and there is

---

[3] For example, Officer Simmons stated in his affidavit that he "considered both the need to immediately find and apprehend the robbery suspect and the risk of harm to other drivers and pedestrians from my driving there as quickly as possible." Officer Simmons also stated that he "was also careful to watch for others on the roadway while driving en route."

a factual dispute regarding whether Officer Simmons was using his emergency lights as he approached the Crosstimbers intersection. Finally, the evidence shows that Officer Simmons applied his brakes but, because the streets were wet, he was unable to stop his patrol car before the intersection and instead slid into the path of Gomez's car.

Taken together, this evidence of Officer Simmons' decisions to (1) not slow his speed to compensate for the wet conditions, (2) not use his patrol car's emergency lights and siren, and (3) not maintain visual contact with the road as he approached an intersection that he knew had a "quick light," could support a finding that he acted recklessly during his response to the armed robbery call. *See City of Missouri City v. Passante*, No. 14-09-00634-CV, 2010 WL 2998777 *8 (Tex. App.—Houston [14th Dist.] Aug. 3, 2010, no pet.) (mem. op.) (affirming trial court's denial of plea to jurisdiction because there were fact issues on whether police officer was reckless, including whether officer (1) was using his emergency lights and siren, (2) had green light at the intersection where he collided with another vehicle, and (3) could not see cross-traffic at intersection); *Belle*, 297 S.W.3d at 535 (affirming trial court's denial of plea to jurisdiction because there was fact issue on whether police officer was reckless when he responded to emergency call by traveling twice the speed limit without operating emergency lights or siren); *Green*, 274 S.W.3d at 29 (concluding firefighter's failure to wear required corrective lenses and decision not to use siren as he drove fire engine into crossing lane of traffic he could not see were factors supporting finding firefighter was reckless).

The City contends on appeal that two cases support the application of the emergency exception, thereby preserving its governmental immunity. Unlike this case, however, there was undisputed evidence in those cases that the emergency vehicles were using their emergency lights and sirens while responding to an

14

emergency call. *See Tex. Dep't of Public Safety v. Sparks*, 347 S.W.3d 834, 841 (Tex. App.—Corpus Christi 2011, no pet.) (reversing trial court's denial of governmental entity's plea to the jurisdiction in part because evidence was undisputed that the police officer "was responding to an emergency call with his emergency lights and siren activated."); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 100 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same). In light of this crucial factual difference, we conclude that neither *Sparks* nor *Kuhn* supports the trial court's decision to grant the City's plea. Because there is a fact issue on whether Officer Simmons' conduct was reckless, we sustain Gomez's second issue. *See Belle*, 297 S.W.3d at 534–35; *see Green*, 274 S.W.3d at 26–27.

## CONCLUSION

Having sustained Gomez's issues on appeal,[4] we reverse the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.

/s/ J. Brett Busby
Justice

Panel consists of Chief Justice Frost and Justices Boyce and Busby.

---

[4] Because we have concluded that there are fact issues on whether Officer Simmons was acting in good faith and whether his actions were reckless, we need not reach Gomez's arguments that the affidavits the City of Houston attached to its plea are substantively defective. *See* Tex. R. App. P. 47.1.