**Affirmed and Substitute Opinion filed August 7, 2014.**



**In The**

# Fourteenth Court of Appeals

---

## NO. 14-13-00516-CV

---

**NANCY QUESTED, Appellant**

**V.**

**THE CITY OF HOUSTON, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-33854**

---

## S U B S T I T U T E   O P I N I O N

We issued our original opinion in this case on June 12, 2014. Appellant filed a motion for rehearing. We overrule the motion for rehearing, withdraw our previous opinion, and issue this substitute opinion.

Today we decide whether an on-call Houston Police Department SWAT[1]

---

[1] Houston Police Department's Special Weapons and Tactics Unit (SWAT) provides tactical support and assistance in high-risk operations and other emergency situations, such as

officer driving his personal vehicle to respond to a hostage stand-off situation is "responding to an emergency call" for the purposes of governmental immunity.[2] In two issues in this accelerated interlocutory appeal, appellant Nancy Quested complains that the trial court abused its discretion in refusing to allow jurisdictional discovery and erred in granting a plea to the jurisdiction in favor of appellee, the City of Houston.  We affirm.

### *Background*

Officer Erik Holland was at home, on-call for a SWAT assignment at about 7:00 p.m. when he received an emergency call to report for duty at the scene of an incident involving a suspect who had fired shots and barricaded himself into a house with several hostages.  Holland left immediately in his personal truck.

At approximately 7:30 p.m. that evening, Quested was driving her Lincoln Town Car on the Sam Houston Toll Road Bridge over the Houston Ship Channel. She suddenly applied her brakes to avoid hitting a car that had stopped in front of her.  Holland was behind Quested in his truck and rear-ended the Lincoln.  Holland admitted he had decided to exceed the speed limit to get to the hostage situation as soon as possible.  When he saw the Lincoln, Holland tried to avoid hitting it by braking and turning to the right, but the left corner of the truck collided with the right rear corner of the Lincoln.  Holland estimated he was traveling at approximately 60 miles per hour when he applied his brakes but did not have an opportunity to look at his speedometer to verify his actual speed.  According to Quested, Holland narrowly missed going off the bridge because he swerved to try to avoid colliding with her.

---

those involving armed suspects, hostage situations, and terrorist threats.

[2] *See* Tex. Civ. Prac. & Rem. Code § 101.055(2).

After the collision, Quested and Holland drove onto the service road and exchanged insurance information. Another police officer arrived but did not issue a traffic citation to Holland.[3] Holland then continued to the hostage situation.

Quested filed suit against Holland for negligence resulting in personal injuries Quested allegedly sustained in the accident. Attorneys for Holland's insurance company, State Farm, initially represented Holland and filed an answer and discovery on his behalf. Three months later, the Senior Assistant City Attorney was substituted for the State Farm attorneys and filed an amended answer on behalf of Holland. Holland pleaded governmental and official immunity and emergency response. He also filed a plea to the jurisdiction.

Quested subsequently amended her petition to add the City as a defendant and request a dismissal of "all claims against [Holland] pursuant to which [the Texas Tort Claims Act[4]] applies, if any."[5] The City answered and filed the plea to the jurisdiction that is the subject of this appeal on the basis of sovereign immunity. Quested subsequently filed a motion to continue the hearing on the City's plea to the jurisdiction for the purpose of conducting jurisdictional discovery. The trial court denied the motion for continuance, granted the plea to the jurisdiction, and dismissed Quested's claims against the City for lack of subject-matter jurisdiction.

### *Discussion*

In two issues, Quested argues the trial court erred in granting the City's plea to the jurisdiction because Quested should have been given an opportunity to

---

[3] According to Quested, the other officer asked her if she wanted Holland to be ticketed and she said "no" because Holland is a police officer.

[4] *See* Tex. Civ. Prac. & Rem. Code §§ 101.001-101.109.

[5] The record on appeal does not indicate whether the trial court dismissed Holland as a defendant in his official capacity.

3

conduct jurisdictional discovery on disputed fact questions regarding whether Holland was "on duty, on a police emergency, [or] driving recklessly and in compliance with police department procedures." The City argues that the trial court properly denied the motion for continuance and granted the plea to the jurisdiction because no fact questions exist as to whether the City was immune from liability under the undisputed facts of this case.

## I.       Plea to the Jurisdiction

Generally, a governmental entity such as the City is immune from tort liability. *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). We review a plea challenging the trial court's jurisdiction de novo.[6] *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id*.

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See id.* at 227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil

---

[6] In reviewing a plea to the jurisdiction, we do not consider the merits of the underlying claim; we consider only the plaintiff's pleadings and the evidence pertinent to the jurisdictional inquiry. *See Tex. Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *see also Carlson v. City of Houston*, 309 S.W.3d 579, 582 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Procedure 166a(c)." *Id*. at 228. Under this standard, we credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See id*. The defendant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. If the defendant discharges this burden, the plaintiff must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id*.

## II.     Texas Tort Claims Act

The Texas Tort Claims Act (TTCA) provides a limited waiver of immunity for tort suits against governmental units. Tex. Civ. Prac. & Rem. Code § 101.021; *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000). Under the section of the TTCA relevant here, a governmental entity may be liable for the torts of its employee "acting within his scope of employment" arising from the operation or use of motor-driven vehicles or equipment if, among other things, the "employee would be personally liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(1); *see DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 653 (Tex. 1995). If the employee is protected from liability by official immunity, the employee is not personally liable to the claimant and the government retains its sovereign immunity.[7] *DeWitt*, 904 S.W.2d at 653.

## III.     No Abuse of Discretion in Denying Continuance Based on Purported Need for Jurisdictional Discovery

In her first issue, Quested argues the trial court abused its discretion in denying her motion to continue the hearing on the City's plea to the jurisdiction to conduct jurisdictional discovery. Because the trial court has firsthand knowledge

---

[7] Official immunity protects individual officials from liability; sovereign immunity protects governmental entities from liability. *DeWitt*, 904 S.W.2d at 653.

5

of the development of a case, reviewing courts apply an abuse-of-discretion standard of review to a trial court's decision on whether to grant a continuance of a plea-to-the-jurisdiction hearing to allow additional discovery. *Patten v. Johnson*, 429 S.W.3d 767, 776 (Tex. App.—Dallas 2014, pet. denied); *see also Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (applying abuse-of-discretion standard to denial of motion to continue to conduct discovery in summary judgment context). An appellate court may reverse for abuse of discretion only if it finds that the trial court's decision was so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe*, 145 S.W.3d at 161; *Klumb v. Hous. Mun. Emps. Pension Sys.*, 405 S.W.3d 204, 227 (Tex. App.—Houston [1st Dist.] 2013, pet. filed).

We consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Joe*, 145 S.W.3d at 161. The trial court does not abuse its discretion when it reasonably could have concluded that additional discovery was unnecessary and irrelevant to the legal issues in the case. *Klumb*, 405 S.W.3d at 227; *see also Joe*, 145 S.W.3d at 162.

In her motion for continuance, Quested complained that the trial court "prohibited [her] from . . . taking [Holland's] deposition, obtaining records from [his] insurance company, or conducting other discovery." Quested argued that the requested discovery was relevant to the jurisdictional inquiry because Holland allegedly changed his story by initially telling his insurance company "he was on a personal trip, going to work" when the accident occurred but later claiming he was

6

"on the job in his personal truck for the . . . SWAT team on an emergency."[8]

In response to the City's plea to the jurisdiction, Quested presented Holland's insurance records. The notation "Personal going to work" had been entered after the line "PURPOSE OF TRIP" in the insurance record. Assuming for the purpose of argument that this evidence is admissible and indicates that Holland believed he was not on duty,[9] the notation in the insurance record does not raise a fact issue that is material to determine jurisdiction.

The evidence shows Holland was following orders to respond to a hostage standoff situation for SWAT. Quested's own evidence presented in an affidavit to the trial court indicates that after the collision, "Holland told [Quested] he was going to the Ellington Field area for a SWAT team hostage situation." Moreover, Holland presented an affidavit in support of the City's plea to the jurisdiction attesting that on the evening of the collision,

- At about 7:00 p.m., he was "off-duty but on-call for [his] SWAT unit assignment" when he received an "emergency call from [his] SWAT commander" to "immediately report for duty and proceed to the scene of an incident involving shots fired by a dangerous armed suspect who had barricaded himself in a house with several hostages";

- He "immediately headed to the incident scene driving [his] personal vehicle";

---

[8] On appeal, Quested further argues Holland changed his story to allege he was "not driving recklessly" at the time of the collision and that Quested should have been allowed to conduct jurisdictional discovery on that basis as well. Quested did not include this argument in her motion for continuance, so we do not address whether she was entitled to jurisdictional discovery on whether Holland was driving recklessly at the time of the collision. *See Moran v. Mem'l Point Prop. Owners Ass'n*, 410 S.W.3d 397, 407 (Tex. App.—Houston [14th Dist.] 2013, no pet.) ("Because their appellate complaint does not comport with the objection they raised at trial, this issue has not been preserved for our review.") (citing Tex. R. App. P. 33.1(a)).

[9] That Holland was driving his personal truck is undisputed.

7

- He was wearing his SWAT uniform;[10]

- He "considered both the need to immediately reach the scene and the risk of harm to other drivers and pedestrians from [his] driving";

- He "determined it was necessary . . . to exceed the posted speed limit and reach the scene as quickly as possible so that [he] could assist with the emergency operation to apprehend or neutralize the dangerous armed suspect barricaded with several hostages and to prevent injury or death of hostages, other peace officers on the scene, and other civilians whom the suspect may endanger";

- "[E]ven if other . . . officers were already on the scene or on the way there . . . [he] determined that it was still necessary . . . to get there as quickly as possible because training for and execution of such operations involve and require significant HPD police officer presence to contain and control the situation and also multiple-member SWAT teams covering multiple positions and vantage points in the event it becomes necessary to neutralize the suspect";

- He "determined that any risk of harm to others from [his] driving was minimal because [he is] a police officer trained and experienced in driving as quickly and safely as possible under many different conditions and circumstances, including driving while exceeding posted speed limits during high-speed chases and responses to emergency calls and situations";

- He "decided that the need to immediately reach the scene outweighed any minimal risk of harm to others from [his] driving";

- "[W]hile en route to the scene . . . [he] continued to assess and decide that any risk of harm to others from [his] driving remained minimal, because, at the time, traffic was light, the weather was clear, the streets were dry, and there was still plenty of natural light from the sun"; and

- He "drove to the incident scene as quickly and safely as possible

---

[10] Quested denies that Holland was wearing his SWAT uniform at the time of the collision, but that fact is not necessary to determine whether he was on duty when the collision occurred.

under the conditions and circumstance and was careful to watch for other drivers and pedestrians while en route."

Thus, it is undisputed that Holland consistently stated he was on his way to an emergency hostage standoff situation on behalf of SWAT at the time of the collision.[11] In that connection, the only disputed issue is a legal issue as to whether Holland was acting within the scope of his employment when the collision occurred. *See Univ. of Tex. Health Sci. Ctr. at Hous. v. McQueen*, 431 S.W.3d 750, 756-57 (Tex. App.—Houston [14th Dist.] 2014, no. pet. h.) (noting appellate court reviews trial court's ruling on a plea to the jurisdiction as a matter of law when "parties do not dispute the facts presented on the jurisdictional issue [but] simply dispute the legal significance of that evidence"). Holland's subjective belief or representations to his insurance company about this issue are irrelevant to that underlying legal issue. *See Tex. Dep't of Pub. Safety v. Little*, 259 S.W.3d 236, 239 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (noting plaintiff's attempt to gather information regarding officer's subjective belief did not change fact that officer actually received emergency call); *see also Klumb*, 405 S.W.3d at 227 (noting subjective views are irrelevant to questions of law).

Quested argues, however, that she should have been afforded the opportunity to depose Holland and his designated expert[12] and to obtain discovery on Holland's "deployment, time, payment, cell phone, . . . [and] mileage records," the City's "emergency procedures for operating vehicles [and] on-duty rules, and records from Holland's insurance company" to ascertain whether Holland was actually "on the job" when the collision occurred. We disagree.

---

[11] Holland's insurance records are not inconsistent with the conclusion that Holland was responding to an emergency. The records indicate Holland was going to work, and part of his job was responding to SWAT situations.

[12] In support of his plea to the jurisdiction, Holland submitted his affidavit and an affidavit from another officer whom Holland had designated as an expert witness.

Quested has not explained how obtaining the requested information could help her overcome the City's plea to the jurisdiction. Discovery showing Holland was on the job would be consistent with the City's argument that he was on duty on his way to an emergency SWAT situation, whereas discovery indicating Holland was not on the job would not help Quested overcome the City's plea to the jurisdiction. In that event, the TTCA would not apply, and still the City would be immune from suit. *See* Tex. Civ. Prac. & Rem. Code § 101.021(1) (waiving liability as to certain wrongful acts, omissions, or negligence of governmental unit employees "acting within [the] scope of employment"). Accordingly, Quested has not shown how the discovery she sought would be material to the trial court's assessment of the City's plea to the jurisdiction.[13] *See* Tex. R. Civ. P. 251 (prohibiting trial court from granting continuance except, in relevant part, "for sufficient cause supported by affidavit"), 252 (in seeking continuance for want of testimony, party must present affidavit stating that the testimony is material, showing the materiality, and showing that she has used due diligence to procure it); *see also Joe*, 145 S.W.3d at 161-62 (refusing to conclude trial court abused discretion in denying motion for continuance for jurisdictional discovery when discovery sought was not material to issue of official immunity); *Klumb*, 405 S.W.3d at 227 ("None of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea.").

We conclude that none of the factual issues on which Quested sought discovery were material in determining the City's plea to the jurisdiction.[14]

---

[13] Holland is still a party to the lawsuit in his personal capacity. Our opinion regarding Quested's entitlement to jurisdictional discovery as to the City has no bearing on Quested's ability to obtain discovery in the ongoing lawsuit.

[14] As a general rule, a plaintiff should be permitted to depose an affiant as to disputed jurisdictional facts. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 491 (Tex. 2012) ("[C]ourts should allow 'reasonable opportunity for targeted discovery' if necessary to

10

Accordingly, the trial court did not abuse its discretion in denying Quested's motion to continue the hearing on the City's plea to the jurisdiction. We overrule Quested's first issue.[15]

## IV. No Fact Question on Jurisdiction

In her second issue, Quested argues the trial court abused its discretion in granting the City's plea to the jurisdiction because there are "disputed facts on whether the police officer was on duty, on a police emergency, and not driving recklessly and in compliance with police department procedures" when the collision occurred. The City asserted in its plea to the jurisdiction that it is entitled to immunity under the "emergency exception" to the TTCA. *See Little*, 259 S.W.3d at 238. Under that exception, the TTCA

> does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

Tex. Civ. Prac. & Rem. Code § 101.055(2).[16]

---

illuminate jurisdictional facts in a plea to the jurisdiction."). However, Quested challenged only issues regarding Holland's on-duty status, which would not have an impact on the trial court's resolution of the City's plea to the jurisdiction.

[15] Quested also argues her due process rights were violated under the United States and Texas Constitutions "by not being able to question the officers before the City's plea was granted." Quested does not, however, develop this argument beyond stating the proposition and citing the United States and Texas Constitutions. This issue is therefore inadequately briefed. *See* Tex. R. App. P. 38.1(i) (requiring that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *In re S.A.H.*, 420 S.W.3d 911, 929 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (declining to craft appellant's argument for him).

[16] Alternatively, the City asserted Holland had official immunity for his actions because he was performing discretionary acts in good-faith and within the scope of his authority. *See Univ. of Hous. v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). We need not reach this issue because

The plaintiff has the burden of proof to establish that the emergency exception does not apply. *Little*, 259 S.W.3d at 238-39. Under that exception, Quested was required to present evidence of one of the following: (1) Holland was not responding to an emergency call or reacting to an emergency situation, (2) Holland's actions were not in compliance with the laws and ordinances applicable to emergency action, or (3) Holland's actions show that he did not care what happened to motorists.[17] *See id.* Quested does not assert that Holland's actions were not in compliance with any laws or ordinances applicable to emergency action.[18] *See id.* Thus, the emergency exception applies unless Quested presented some evidence that Holland was not responding to an emergency call or reacting to an emergency situation or that Holland's actions

we conclude that the emergency exception applies under these circumstances.

[17] Because "conscious indifference" and "reckless disregard" are not defined in the statute, we give each its ordinary meaning. *City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 n.19 (Tex. 2006) (citing Tex. Gov't Code § 312.002). The supreme court interpreted these terms in this context to require proof that a party knew the relevant facts but did not care "what happened to motorists." *Id.* at 672 & n.19.

[18] Quested cites ordinances applicable to emergency vehicle operators but does not argue that Holland did not comply with them or even attempt to show how they apply. Quested also speculates that "the City had rules and regulations and records establishing liability for the acts or omissions of [Holland] if he were on the job at the time of the crash." However, the emergency exception specifies that in the absence of "laws and ordinances applicable to emergency action," the applicable standard to allow a claim against a governmental unit for the action of its employee responding to an emergency call or reacting to an emergency situation is "conscious indifference or reckless disregard for the safety of others." Tex. Civ. Prac. & Rem. Code § 101.055(2). Quested has not shown how the City's rules, regulations, or records could establish that Holland acted with conscious indifference or reckless disregard for the safety of others, and Quested had the burden of proof on this issue. *See Little*, 259 S.W.3d at 239-40.

Quested further argues that the City was required to show good faith compliance with HPD's emergency procedures while Holland was operating his vehicle, but this is not the law. The case Quested cites for this contention does not address a governmental unit's immunity from liability under the emergency exception to the TTCA; instead, it addresses whether an officer was performing a discretionary function in good faith for the purposes of official immunity when he decided to drive to the scene of a possible burglary to lend assistance. *See Harless v. Niles*, 100 S.W.3d 390, 398-400 (Tex. App.—San Antonio 2002, no pet.).

showed he did not care what happened to motorists. *See id*.

**Responding to Emergency Call**. Holland attested that on the evening of the collision, he received "an emergency call from my SWAT Commander . . . who ordered me to immediately report for duty and proceed to the scene of an incident involving shots fired by a dangerous armed suspect who had barricaded himself in a house with several hostages."[19] Quested presented no evidence to the contrary. She points to her affidavit in which she admitted that Holland told her "he was going to the Ellington Field area for a SWAT team hostage situation" but attested Holland was not in uniform and "did not appear to be on any emergency since he was laughing and joking with the deputy constable at the scene and I left the scene before he did." These observations alone, however, do not raise a fact question regarding whether Holland was responding to an emergency call at the time of the collision.

Even if Holland subjectively had not believed he was on-duty at the time, his belief would not change the nature of the call to which he was responding. *Id.* at 239-40; *see also City of San Antonio v. Rosenbaum*, No. 04-11-00498-CV, 2011 WL 6739583, at *3 (Tex. App.—San Antonio Dec. 21, 2011, no pet.) (mem. op.). Viewing the evidence in the light most favorable to Quested, she has not raised a fact question as to whether Holland was responding to an emergency call. *See, e.g., City of San Antonio v. Hartman*, 201 S.W.3d 667, 672-73 (Tex. 2006) (holding an emergency situation existed as a matter of law under section 101.055(2) when unprecedented flooding was present and the city had officially

---

[19] Quested asserts that she objected to hearsay in Holland's and his expert's affidavits and argues that the trial court implicitly denied the objections by granting the City's plea to the jurisdiction. However, Quested was required to obtain an explicit ruling from the trial court to preserve error. *See Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Thus, she has waived her complaint on appeal that the affidavits included hearsay. *See id*.

declared a disaster); *City of Houston v. Davis*, No. 01-13-00600-CV, 2014 WL 1678907, at *5 (Tex. App.—Houston [1st Dist.] Apr. 24, 2014, no. pet. h.) (mem. op.) (holding officer was responding to an emergency situation when officer pulled over car in response to a report that the driver of the car had tried to run another vehicle off the road); *Little*, 259 S.W.3d at 237, 239 (holding dispatch call requesting assistance with a wanted person was an emergency call when officer testified without contradiction that law enforcement officers consider such a request to be an emergency).

**No Evidence of Conscious Indifference or Reckless Disregard for Safety**. As set forth above, to create a fact question on "conscious indifference or reckless disregard for the safety of others," Quested was required to present some evidence that at the time of the collision, Holland "knew the relevant facts" but "did not care what happened to motorists." *Hartman*, 201 S.W.3d at 672 & n.19; *Little*, 259 S.W.3d at 238. This requires showing more than a momentary judgment lapse—it requires showing that the driver has committed an act he knew or should have known posed a high degree of risk of serious injury. *City of Amarillo v. Martin*, 971 S.W.2d 426, 429–30 (Tex. 1998); *City of Pasadena v. Kuhn*, 260 S.W.3d 93, 99 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

As set forth above, Holland attested that while en route to respond to the hostage situation, he considered the need to reach the scene quickly but also minimize the risk to other drivers and pedestrians; determined it was necessary to exceed the speed limit to assist with the emergency operation, even if other officers were already there; determined the risk of harm to others from his driving was minimal; decided the need to reach the scene quickly outweighed the risk, particularly considering that traffic was light, the weather was clear, the streets were dry, and there was plenty of daylight; and was careful to watch for other

drivers and pedestrians. Holland further attested that while he was driving, Quested slammed on her brakes "suddenly and without warning." Holland asserted he applied his brakes and "took evasive actions" to avoid colliding with Quested's vehicle, but the left corner of his truck collided with the right rear corner of the Lincoln. He estimated he was driving approximately 60 miles per hour when Quested applied her brakes; Holland stated that he applied his brakes immediately when Quested applied hers.

Quested admitted that Holland almost went over the side of the bridge to try to avoid hitting her vehicle. She asserted, however, that she was traveling the posted speed limit and was able to stop without hitting the car in front of her. She concluded "based on [her] driving experience" that Holland was "driving recklessly under the circumstances when he hit [her] car" because he "should have been able to stop without hitting me and almost going over the side of the bridge, if he had been traveling at the posted speed . . . and maintained a safe distance from my vehicle."

Although this testimony supports the obvious conclusion that Holland would not have rear-ended the Lincoln if he had been driving slowly enough and far enough away from Quested to avoid hitting her,[20] it is not evidence that Holland committed an act that he knew or should have known posed a high degree of risk of serious injury or that he did not care what happened to other motorists when he decided to exceed the speed limit, particularly in light of the evidence that Holland almost drove off the bridge to avoid colliding with Quested's vehicle. *See, e.g., Kuhn*, 260 S.W.3d at 99-100 (holding that officer's actions in entering intersection with activated lights and siren to respond to house fire were not taken with

---

[20] We note that Quested presented no evidence regarding how closely Holland was following her or what the applicable speed limit was.

conscious disregard or reckless indifference to safety when officer slowed down before entering intersection and colliding with plaintiff); *Pakdimounivong v. City of Arlington*, 219 S.W.3d 401, 411-12 (Tex. App.—Fort Worth 2006, pet. denied) (holding that officers' actions were not taken with conscious indifference or reckless disregard for safety of deceased when no evidence showed that officers did not care what happened to deceased); *City of San Angelo Fire Dep't v. Hudson*, 179 S.W.3d 695, 701–02 (Tex. App.—Austin 2005, no pet.) (concluding there was no evidence of reckless disregard for safety of others when officer drove into intersection without stopping and witness did not hear brakes being applied). Viewing the evidence in the light most favorable to Quested, we conclude Quested has not raised a fact question that Holland's actions reflected conscious indifference or reckless disregard for the safety of others.

We conclude the evidence presented to the trial court conclusively establishes the applicability of the emergency exception to the TTCA. Accordingly, the City was entitled to sovereign immunity from Quested's claims, and the trial court did not err in granting the City's plea to the jurisdiction. We overrule Quested's second issue.

We affirm the judgment of the trial court.


/s/          Martha Hill Jamison
                 Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.