**Affirmed and Memorandum Opinion filed September 8, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00052-CV

---

## THE PORT OF HOUSTON AUTHORITY, Appellant

### V.

## ABRAN MORALES, Appellee

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2019-09088**

---

## MEMORANDUM OPINION

Appellee Abran Morales filed suit against appellant the Port of Houston Authority ("the Port") for negligence concerning an accident between a gantry crane driven by one of the Port's employees and Morales's truck. In two issues, which we construe as one, the Port argues that the trial court should have granted its motion for summary judgment because the trial court lacks subject-matter jurisdiction over Morales's negligence claims. We affirm the judgment of the trial court.

# I.  BACKGROUND

In 2018, Morales was working for Palletized Trucking as a truck driver. On August 20, 2018, Morales was delivering a container at the Port's Bayport Container Terminal. Morales parked his truck in the bypass lane and waited in a line of trucks to deliver the container. Richard Taylor, an employee working for the Port, was driving a gantry in the runway to the right of the bypass line of trucks. Taylor was leaving pad 3A traveling east toward pad 2A, when the gantry he was operating struck the right-side mirror of the truck in front of Morale's truck, and then struck Morales's parked truck.

On February 6, 2019, Morales filed suit against the Port for negligence and negligence per se. Morales, in part, specifically alleged that Taylor violated his duty to exercise ordinary care while operating the gantry by: (1) failing to maintain a proper lookout; (2) failing to control the distance between his vehicle and surrounding vehicles; (3) failing to maintain attention; (4) failing to timely apply brakes; (5) failing to yield right of way; (6) failing to control the speed of his vehicle; and (7) failing to maneuver his vehicle so as to avoid a collision. According to Morales, the Port's immunity has been waived under the Texas Torts Claims Act because Taylor was acting within the scope of his employment with the Port, the injury arises from the operation of a motor vehicle, and Taylor would be personally liable to Morales under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). Morales further alleged that he suffered injuries as a direct result of Taylor's negligence.

In March of 2019, the Port filed its special exceptions, plea to the jurisdiction, and original answer. The Port argued that its immunity was not waived because Morales failed to state: (1) what specific legal duty the Port owed to Morales; (2) what specific act or omission by the Port constituted a breach of

duty and caused Morales's alleged injury; (3) how any alleged breach of duty proximately caused Morales's alleged injury; and (4) what specific injury Morales suffered as a result of the incident.

In December 2020, the Port filed a traditional and no-evidence motion for summary judgment, arguing that Morales's negligence cause of action failed because the evidence did not demonstrate that Taylor breached any duty he owed to Morales and there was no evidence that this accident caused Morales's injuries. The declarations of Taylor and Officer Stacy Joseph—an officer working for the Port of Houston Police Department ("PHPD")—were attached to the Port's motion.

According to Taylor, the gantry operates in runways identified by white lines, but Taylor alleges Morales's truck was parked over the white lines marking the truck lane. Because of the width of the gantry, Taylor claimed he could not see Morales because Morales's truck was in the gantry's blind spot. Taylor also asserted that there is a green line inside of the white lines marking the gantry runway to help the gantry operators stay inside their runway lane; if an operator keeps the driver side wheels on the green line, the gantry will stay inside the runway because the only way a gantry can turn is by completely stopping and unlocking the wheels. According to Taylor, he kept the gantry's wheels on the green line. Furthermore, Taylor asserted that truck drivers at the port are trained to yield the right-of-way to gantry operators. The Port attached a photograph showing that the gantry was slightly over the white lines; however, according to the Port, the gantry crossed the line as a result of the impact with Morales's truck.

Officer Joseph stated that he created the accident report, and affirmed that the PHPD does not enforce the Transportation Code at the Port because of the Port's lack of State, County, or City highways, roads, or streets. According to

3

Officer Joseph, the right side of Morales's truck was outside of the line marking the truck lane. He also averred that Taylor kept his wheels on the green line he was supposed to follow and that all of the green lines were drawn correctly. He also stated that an "impact often causes [the gantry] to turn slightly." Officer Joseph described the damage to the truck as follows:

> [Morales] drove his work truck away from the scene. The accident caused denting along the right side of the truck. The fiberglass panel on the sleeper cab was peeled back, and the step into the sleeper cab was damaged. The driver's side of the truck did not appear to be damaged. I did not observe any damage that would obviously make the truck unsafe to drive.

The Port also attached the Port's Health, Safety, Security, and Environment Policy Document ("the Policy") to its motion for summary judgment. The Policy applies to "all truck drivers operating at the Bayport Terminal." The Policy states multiple times that gantry operators "always have the right of way." Thus, the Port claimed that Morales failed to raise any evidence suggesting that Taylor breached a duty to Morales.

Concerning causation, the Port argues that Morales fails to provide expert testimony to support the causation element of his negligence and negligence per se claim. The Port avers that Morales has pre-existing injuries to the same part of his body from three prior motor-vehicle accidents: (1) in 2013, Morales fractured his neck when he was struck by a drunk driver; (2) in February 2018, Morales injured his back in a motor-vehicle accident; and (3) in August 2018, after the incident with Taylor's gantry, Morales injured his back in a motor-vehicle accident.

Further, in March 2018, the results of an MRI of Morales's neck and back revealed disc herniations between C5 and C6 and also between C6 and C7, and a 1.8mm herniation at L5-S1. MRI results taken after the August 2018 gantry

4

collision showed that the herniations had increased in size, and a radial fissure was noted at L3-L4 that was not noted on the March 2018 MRI. Morales also attached his medical records from the doctor he visited after the incident—Matthias Wiederholz, M.D. Wiederholz included the following note in the medical records:

> The patient denies an immediate history of neck or back pain prior to the accident. Within a reasonable degree of medical probability, the injuries sustained are causally related to the accident. He had an accident in February with neck and back pain but was able to return to full duty after a short course of physical therapy at that time. He was not having neck or back pain prior to this injury.

However, the Port claimed that because of the prior and subsequent injuries to the same parts of Morales's body, and without proof of Wiederholz's qualifications and credible, scientific research to support Wiederholz's causation analysis, Wiederholz's opinion was conclusory; therefore, Morales failed to provide evidence that his injuries were a result of the accident with Taylor, making summary judgment appropriate.

The Port further argued that Morales's negligence per se claim failed because Morales did not establish that Taylor violated any statutes. In his petition, Morales cited generally to the Texas Transportation Code § 545, alleging that Taylor's actions constituted negligence per se. However, citing Officer Joseph's declaration, the Port asserted that Morales's negligence per se claim failed because the Texas Transportation Code is inapplicable to the Port.

The Port also averred that Morales failed to provide evidence that his medical bills were paid or incurred. *See* Tex. Civ. Prac. & Rem. Code Ann. § 41.0105 ("In addition to any other limitation under law, recovery of medical or health care expenses incurred is limited to the amount actually paid or incurred by or on behalf of the claimant."). Although Morales produced evidence of

5

approximately $151,000 in medical bills, the Port alleged that there was no evidence that Morales actually paid any of those bills, made any arrangements to pay those bills, or that any of the medical providers intended to hold Morales responsible for paying those bills if he did not prevail in litigation.

In his response to the Port's motion for summary judgment, Morales argued that there was sufficient evidence to raise a fact issue as to causation, because as evidenced by the MRI results before and after the gantry accident, the severity of his disc herniations had increased, and there was an MRI finding of a radial fissure after the gantry accident at L3-L4 that was not found in the MRI results from before the gantry accident. Morales further argued that the herniation located at L5-S1 had grown from 1.8 mm to 2.0 mm, and that Morales claimed injuries not complained of prior to the gantry accident, including a left shoulder injury and pain to his shoulders, entire back, chest and hips, supported by his medical records and deposition testimony. Morales further avers that he was not relying on temporal proximity to prove causation; given the MRI results prior to and after the gantry accident, a five-month period, Morales argued an expert was not required to evaluate whether Morales's injuries were caused by the gantry accident, and moreover, that Wiederholz, an orthopedic specialist, noted the prior accident and neck and back pain, Morales's recovery from those injuries, and noted Morales reported not having neck or back pain prior to the current injury. He asserts Wiederholtz's documentation, including the presenting complaints, clinical examination, and correlation with diagnostic studies, are sufficient to establish causation.

Concerning his negligence per se claim, Morales argued that per the Port's own polices: "*5.3.2 PORT HOUSTON safety procedures, standards, rules and guidelines only supplement and do not in any way supersede state and federal laws*

*or other industry regulations.*" (emphasis added).

Morales averred that the Texas Transportation Code was designed to protect motorists such as Morales, and that Morales' petition, although not required to do so, set forth seven violations of the Transportation Code.

Regarding his negligence claim, Morales argued that it is undisputed that Taylor left his lane. And Joseph's incident report reflects that "Morales also stated the crane was outside the crane lane causing the accident." Thus, Morales argues that his statement of facts to Officer Joseph was sufficient to raise a fact issue as to Taylor's negligence.

Concerning the paid and incurred expenses, Morales argued that the following conversation at trial clearly indicated Morales's responsibility to pay the medical bills, and reflects Morales's inability to initially understand the question:

[Question]: If you do not recover those expenses from this lawsuit, would you pay those medical expenses?

[Morales]: It's for my attorney.

[Question]: I'm sorry, I couldn't hear you.

[Morales]: You're breaking up there.

[Question]: Yeah, I'm sorry, I couldn't hear you. If you were not to recover those expenses from this lawsuit, would you plan on paying those expenses?

[Morales]: Yes, I would have to pay for them.

On January 13, 2021, a hearing was conducted on the Port's motion. During the hearing, Morales agreed to nonsuit his negligence per se claim. At the conclusion of the hearing, the trial court informed the parties that it was denying

7

the motion for summary judgment as to the negligence claim, "based on [Morales] agreement to non-suit claims for negligence per se claim." The trial court signed an order denying the Port's motion later that day. On January 15, 2021, Morales filed an amended petition, which no longer raised a negligence per se claim. The Port filed a timely notice of appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a); *City of Houston v. Atser, L.P.*, 403 S.W.3d 354, 357 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("An interlocutory appeal may be had when a trial court denies a governmental unit's challenge to subject matter jurisdiction, 'irrespective of the procedural vehicle used.'" (quoting *Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006))).

## II.     SOVEREIGN IMMUNITY

### A.     STANDARD OF REVIEW

Morales agrees that the Port is a governmental entity. Generally, a governmental entity such as the Port is immune from tort liability. *City of Galveston v. State,* 217 S.W.3d 466, 468–69 (Tex. 2007); *Quested v. City of Houston*, 440 S.W.3d 275, 279–80 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Governmental immunity from suit defeats a trial court's subject matter jurisdiction, and thus is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex. 2004). However, a defendant may also raise the lack of subject-matter jurisdiction in a motion for summary judgment. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000); *Atser, L.P.*, 403 S.W.3d at 357. Upon such a jurisdictional challenge, regardless of the procedural vehicle used, the trial court may consider evidence, and must do so when necessary to resolve the jurisdictional issues raised. *Blue*, 34 S.W.3d at 555.

We review a challenge to the trial court's jurisdiction de novo. *State v.*

8

*Holland,* 221 S.W.3d 639, 642 (Tex. 2007). We first look to the pleadings to determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Miranda,* 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *See id.*; *Martinez v. Harris County*, 526 S.W.3d 557, 562 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *Quested*, 440 S.W.3d at 279.

Here, the Port challenges the existence of jurisdictional facts with supporting evidence. In such cases, the standard of review mirrors that of a traditional summary judgment: "[I]f the plaintiffs' factual allegations are challenged with supporting evidence necessary to consideration of the plea to the jurisdiction, to avoid dismissal plaintiffs must raise at least a genuine issue of material fact to overcome the challenge to the trial court's subject matter jurisdiction." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018) (quoting *Miranda,* 133 S.W.3d at 221). In determining whether a material fact issue exists, we must take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Id.* In doing so, however, we cannot disregard evidence necessary to show context, and we cannot disregard evidence and inferences unfavorable to the plaintiff if reasonable jurors could not. *Id.*; *see Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 692 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the . . . evidence.").

## B.    APPLICABLE LAW

The Port, as a governmental entity, cannot be vicariously liable for an employee's acts unless its governmental immunity has been waived. *See City of*

*Pasadena v. Belle*, 297 S.W.3d 525, 529 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Under the facts of this case, the only waiver of the Port's immunity from suit and liability raised by Morales is found in § 101.021 of the Texas Tort Claims Act ("TTCA"), which provides in relevant part:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
>> (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and
>>
>> (B) the employee would be personally liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1).

Morales argues that Taylor would be personally liable under a negligence cause of action.

> The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. The two elements of proximate cause are cause in fact (or substantial factor) and foreseeability. These elements cannot be satisfied by mere conjecture, guess, or speculation. Cause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred.

*IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798–99 (Tex. 2004) (internal citations omitted). To establish breach of duty, "the plaintiff must show either that the defendant did something an ordinarily prudent person exercising ordinary care would not have done under the particular circumstances or that the defendant failed to do something that an ordinarily prudent person would have done in the exercise of ordinary care." *Douglas v.*

*Aguilar*, 599 S.W.3d 105, 108 (Tex. App.—Houston [14th Dist.] 2020, no pet.).

## C.   APPLICATION

We first address Morales's contention that it is improper for the Port to seek appellate review of the denial of its motion for summary judgment. Specifically, Morales argues that "seeking appellate review of a denial of a summary judgment through an interlocutory appeal based on [Texas Civil Practice and Remedies Code] §51.014(a)(8) is the wrong standard as applied to this case lacks merit [sic]." However, as we noted above, an interlocutory appeal may be had when a trial court denies a governmental unit's challenge to subject matter jurisdiction, "irrespective of the procedural vehicle used." *Atser*, 403 S.W.3d at 357; *see* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a).

We next address the Port's challenge to the trial court's jurisdiction. For the Port's immunity to be waived, it was necessary for Morales to raise a fact issue as to: whether the Port is a governmental unit; Taylor was acting in the scope of his employment; Morales's injuries arose from Taylor's operation of a motor-vehicle; and whether Taylor would be personally liable to Morales under Texas law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1). The Port concedes that the accident involved Taylor, an employee of a governmental unit, and the Port does not dispute that Taylor was acting in the scope of his employment. However, the Port contends that Morales failed to raise a fact issue regarding whether Taylor would be personally liable to Morales because Morales did not raise an issue of fact on each element of his negligence claim. Specifically, the Port alleges that there is no evidence that: (1) Taylor breached his duty as a gantry driver; and (2) the August 2018 gantry accident caused Morales's injuries. We first address the Port's argument concerning breach of duty.

11

### 1. Morales raised a fact issue on Taylor's alleged breach of duty

In his petition, Morales asserted that Taylor failed to: maintain a proper lookout; control the distance between his vehicle and surrounding vehicles; maintain attention; timely apply brakes; yield the right of way; control the speed of his vehicle; and maneuver his vehicle so as to avoid a collision. We then take as true all evidence favorable to Morales, and indulge every reasonable inference and resolve any doubts in Morales's favor. *See Alamo Heights*, 544 S.W.3d at 771. Under this analysis, the evidence that is favorable to Morales includes the photographs showing the gantry over the line, Morales's statement to Officer Joseph that Taylor crossed the line, and the deposition testimony from Morales that the gantry struck the right-side mirror of the truck in front of Morale's truck, and several trucks in front of his truck had to move out of the way of the gantry that had veered out of its lane.

The Port argues that there is overwhelming evidence suggesting that Taylor was not negligent. For instance, Taylor asserted in his declaration that Morales was in a blind spot because cargo containers blocked the "wharf side leg of the [gantry] from view." The Port's Policy warns truck drivers that the gantry operator "has a very limited view of the blindside" and to use "extreme caution when in the area of [a gantry because] . . . . the [gantry] operator has limited visibility due to the [gantry's] cab configuration." The Port argues there is no evidence to suggest that Taylor failed to keep a proper lookout or failed to maintain attention or that he was in any manner distracted. Additionally, the Policy states that gantry operators "always have the right of way." While this evidence may support a conclusion that Taylor did not breach a duty, there is also evidence in the record that supports the opposite conclusion. *See id.* Viewing the evidence in the light most favorable to Morales, and indulging every reasonable inference therefrom, *Miranda,* 133

S.W.3d at 226, we conclude that Morales has presented sufficient evidence to raise a genuine issue of fact concerning Taylor's alleged breach of duty. *See id.*

### 2. Morales raised a fact issue regarding causation

The Port also argues that Morales failed to raise a genuine issue of fact regarding causation. The Port asserts that Morales had both pre-existing and subsequent injuries in the same areas of his body due to prior motor-vehicle accidents. However, Morales points out that while some injuries were to his back and neck, those injuries were exacerbated, while other of his claimed injuries were not previously complained of. The MRI before the gantry accident showed that Morales had a 1.7mm herniation at C5-C6 area; the post-gantry-accident MRI showed that the herniation increased to 2.5mm. Likewise, the herniation at C6-C7 area was 2.0mm pre-accident but 2.5mm post-accident, there was an MRI finding of a radial fissure after the gantry accident at L3-L4 that was not found in the MRI results from before the gantry accident, and the herniation at L5-S1 had increased from 1.8mm to 2.0mm. Additionally, the MRI taken after the gantry accident revealed that Morales had "[m]ild subacromial-subdeltoid bursitis" and "mild glenohumeral joint effusion." These are injuries that did not exist prior to the gantry accident.

The Port additionally contends that Wiederholz's medical opinion on causation was conclusory; thus, Morales allegedly failed to provide expert testimony to demonstrate that his injuries were caused specifically by the gantry accident. However, Wiederholz's opinion indicates he was aware of Morales's previous accidents. He noted that after the prior accident, Morales was able to go back to work after a short period of therapy and that Morales was not experiencing pain prior to the gantry accident. Additionally, before opining that the gantry accident caused Morales's injuries, Wiederholz performed an extensive clinical

13

examination of Morales. Wiederholz found that Morales suffered from restricted range of motion in the cervical area with lateral ending, sciatic pain on the left side, and a restricted range of motion in the lumbar area. Wiederholz also indicated in his medical report that he had reviewed Morales's MRIs and that the MRIs correlated with his clinical findings during the exam. Evidence from an expert is deemed conclusory when a conclusion is stated without an explanation or factual substantiation. *See, e.g., LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006) (concluding that the expert's evidence was conclusory because the physician simply stated "in my opinion, the conduct of [LMB] substantially caused Ernestina Moreno's injuries and death"); *Aguirre v. Vasquez*, 225 S.W.3d 744, 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (concluding that the following expert statement was conclusory: "The decision to voluntarily stop in a lane of an interstate highway is grossly negligent. This action goes far beyond anything a person utilizing ordinary care would be expected to do"). We do not agree that Wiederholz's medical report is conclusory; Wiederholz explained his medical opinion and the underlying facts upon which that conclusion was based. *See Rorie v. Harris Cnty.*, No. 14-06-01146-CV, 2008 WL 878938, at *4 (Tex. App.— Houston [14th Dist.] Apr. 3, 2008, no pet.) ("A statement is conclusory if it does not provide underlying facts to support the conclusion."). Thus, we conclude that Morales presented sufficient evidence to raise a fact issue concerning causation.

### 3. Summary

We conclude that Morales presented at least a scintilla of evidence to raise genuine issues of fact as to each element of his negligence claim. Accordingly, the trial court did not err in denying the Port's motion for summary judgment. We overrule the Port's sole issue.

### III. CONCLUSION

We affirm the order of the trial court.

/s/  Margaret "Meg" Poissant
    Justice

Panel consists of Justices Wise, Poissant, and Wilson.