**Affirmed and Memorandum Opinion filed April 23, 2024**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00319-CV

### CITY OF HOUSTON, Appellant

### V.

### LUCY CARO, Appellee

## On Appeal from the 127th District Court
## Harris County, Texas
## Trial Court Cause No. 2020-63763

## MEMORANDUM OPINION

In this interlocutory appeal appellant, the City of Houston, appeals from the trial court's order denying its plea to the jurisdiction. Tex. Civ. Prac. & Rem. Code § 51.014(8). Because there is a fact issue on whether Houston waived its immunity from suit, we affirm.

### BACKGROUND

Houston owns Bush Intercontinental Airport (IAH). Appellee Lucy Caro is

a United Airlines flight attendant. Caro was walking to work in the Terminal D/E Automated People Mover (APM) area of IAH about 5:00 a.m. when she slipped on water that had accumulated beneath an air conditioning vent. According to Caro, she did not see any water or other liquid on the floor before she fell. While laying on the floor after her fall, Caro observed water drip from the air conditioning vent above her. Caro could not get up after her fall, and she remained on the floor until paramedics arrived to take her to the hospital. According to Caro, she did not see a puddle on the floor after she fell, and there were no warning signs or barricades present. Caro explained that, after her fall, she "wasn't looking for a puddle. I wasn't even paying attention to tell you the truth." There were no other witnesses to Caro's fall.

Caro injured her right eye and the right side of her body when she landed on the wet floor. Caro suffered an inoperable tear of a tendon in her right leg. Caro continues to suffer pain in her right leg when she engages in daily activities such as walking, sitting, or standing. Caro's injured right eyebrow experienced nerve damage. According to Caro, her right eyebrow area remains numb, and it does not move the same as her left eyebrow.

Houston contracts with Comfort Systems USA, Inc. to operate and maintain the air conditioning and heating systems at IAH. Houston, on the other hand, is directly responsible for airport maintenance and custodial work at IAH. This includes responsibility for inspecting walkways at the airport for "liquids, spills and debris."

There were condensation issues affecting the air conditioning vents in the area where Caro fell as early as 2013. The problems included water dripping from the vent down to the floor below. The condensation problems persisted for years after Caro fell. Houston was aware that Comfort Systems was on notice that the

2

air conditioning and heating system in the Terminal D/E APM area was in need of service.

The day before Caro slipped and fell, Houston custodial supervisor Yadira Gonzalez observed condensation slowly dripping from the air conditioning vent down onto the floor in the Terminal D/E APM area where Caro would fall the next morning. Gonzalez also saw a wet floor sign was present. Gonzalez alerted custodial staff to clean up the water on the floor, and she waited until it was removed. Gonzalez checked the area again a few hours later, and there was no water on the floor. Gonzalez checked the floor at the end of her shift about 2:30 in the afternoon and she saw no water on the floor. Additionally, the wet floor sign had been moved beside the wall.

Caro filed suit against Comfort Systems and Houston. Eventually, Houston filed a Traditional and No-Evidence Plea to the Jurisdiction for Final Judgment on Immunity and Motion for Severance. Houston argued that it had not waived its immunity under the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code § 101.025. After conducting discovery relevant to the jurisdictional issue, Caro filed her response to Houston's motion. Houston filed a reply in support of its motion and moved to exclude some of Caro's evidence. The trial court denied Houston's plea without ruling on Houston's evidentiary objections. This interlocutory appeal followed.

## ANALYSIS

In a single issue, Houston argues that the trial court erred when it denied its plea to the jurisdiction because it did not have actual knowledge of the water on the floor that caused Caro to slip and fall.

3

## I.    Standard of Review and Applicable Law

Governmental units are immune from suit unless immunity is waived by state law. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). A plaintiff bears the burden of establishing a waiver of immunity under the TTCA. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). If a governmental unit has immunity from suit, a trial court lacks subject matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). A challenge to a trial court's subject matter jurisdiction may be asserted by a plea to the jurisdiction or in a motion for summary judgment. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). We review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 228.

A defendant's plea may challenge either the plaintiffs' pleadings or the existence of jurisdictional facts. *Id.* When, as here, the governmental unit challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *See City of Houston v. Ranjel*, 407 S.W.3d 880, 887 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If that evidence raises a fact issue as to jurisdiction, the governmental entity's plea must be denied because the issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to present a jurisdictional fact issue, however, the governmental unit's plea must be granted. *Maspero*, 640 S.W.3d at 529. The standard of review for a plea to the jurisdiction based on evidence generally mirrors that of a motion for summary judgment. *Quested v. City of Houston*, 440 S.W.3d 275, 280 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We therefore must credit evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.*

The TTCA waives governmental units' immunity from suit in certain areas

4

when the statutory requirements are met, including, as relevant here, cases arising from alleged premises defects. *See* Tex. Civ. Prac. & Rem. Code §§ 101.022(a); *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016); *Miranda*, 133 S.W.3d at 224-25. The legislature waived the immunity of governmental units as to personal injury "so caused by a condition . . . of real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *See* Tex. Civ. Prac. & Rem. Code §§ 101.021(1)(B), (2), 101.025. Generally, "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). The duty owed to a licensee requires that "a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not." *Sampson*, 500 S.W.3d at 391; *see City of Houston v. Ayala*, 628 S.W.3d 615, 619 (Tex. App.— Houston [14th Dist.] 2021, no pet.). Here, Caro does not dispute that she must establish waiver as a licensee.[1]

To establish waiver under the TTCA, Caro, as a licensee, must prove the following five elements: (1) a condition of the premises created an unreasonable risk of harm; (2) the governmental defendant had actual knowledge of the condition; (3) Caro did not have actual knowledge of the condition; (4) the governmental defendant failed to exercise ordinary care to protect the licensee from danger; and (5) the governmental defendant's failure proximately caused

---

[1] Caro did allege that she was an invitee in both her Original Petition and First Amended Petition. In her response to Houston's Plea, however, Caro argued only that she was a licensee. Caro continues that argument on appeal. We therefore need not address whether Caro met the requirements to qualify as an invitee the day she slipped and fell at IAH.

injury to the licensee. *Sampson*, 500 S.W.3d at 391 (citing *Payne*, 838 S.W.2d at 237).

**II.    The evidence submitted by the parties creates a fact issue which must be resolved by the factfinder.**

The dispute here focuses on elements 2, 3, and 4 above. Houston initially argues that Caro failed to establish that it had actual knowledge of the wet floor. Houston begins its argument by asserting that "the mere possibility that a dangerous condition could develop over time is insufficient to establish knowledge." But then, citing *City of Corsicana v. Stewart*, Houston acknowledges that "[a]ctual knowledge may be satisfied by circumstantial evidence if it directly or reasonably supports a conclusion of knowledge." 249 S.W.3d 412, 415 (Tex. 2008) (per curiam). We therefore turn to the evidence in the record relevant to the actual knowledge element.

Caro presented deposition testimony from Patrick McCoy who worked for Comfort Systems as a manager for building automation at IAH commencing in 2013.[2] McCoy testified that he was responsible for the technical and software controls on IAH's air conditioning and heating system in 2019. According to McCoy, the condensation issue with the IAH air conditioning vents dated back to at least 2013 and continued years past the date Caro fell. The problem created by the condensation was water would accumulate on the metal air conditioning vents and then drip down on the floor creating a dangerous situation. According to McCoy, this problem occurred throughout IAH and, in an effort to correct the problem, numerous metal vents were replaced with wooden vents. The vent over the spot where Caro slipped and fell was not replaced as part of this effort to

---

[2] McCoy testified that he left Comfort Systems at IAH for a short period of time, but he returned to working at IAH for Comfort Systems in 2016.

6

eliminate the condensation problem.

In addition to Houston's knowledge of a condensation issue with IAH's air conditioning vents spanning years, a City of Houston Custodial Supervisor at IAH, Yadira Gonzalez, saw the vent above the spot where Caro would slip and fall dripping less than 24 hours before Caro fell. According to Gonzalez, she worked as a Custodial Supervisor in the building where the Terminal D/E APM was located. Gonzalez explained that, as part of her job duties, she "was responsible for walking my assigned area and checking the area for liquids, spills and debris." Gonzalez continued:

> On June 20, 2019, I was working First shift at IAH. My shift began at approximately 6:00 a.m. and ended at approximately 2:30 p.m. While performing my first walkthrough in the area where Plaintiff allegedly fell, I saw a wet floor sign present. I saw four very small drops of water in a line approximately five feet before the escalator. I saw one drop of condensation drip from the A/C's duct ventilation in the approximately fifteen minutes I observed the area. I alerted a custodian to clean the water, waited for her to complete the task, and then checked to ensure the floor was dry. I took the attached pictures showing the wet floor signs at approximately 8:48 a.m. and sent them to my direct supervisors.
>
> I checked this area again sometime before 12:00 p.m. At that time, there was no water on the floor, and the wet floor sign was positioned in the area against the wall. I visited the area again at or before 2:00 p.m. The floor was dry; there was no water on the floor, and the wet floor sign was positioned in the area against the wall. At or around 2:35 p.m., I passed through this same area on my way home. There was no water on the floor, and the wet floor sign was positioned in the area against the wall.

While Gonzalez states that she notified her supervisors about the spill and placement of warning signs, no entry was made in the Airport Safety and Operations Compliance System. In addition, no entry or note was made in the custodial management system alerting custodial workers in future shifts about the

7

dripping air conditioning vent.  Then, early the next morning about 5:00 a.m., Caro did not see a wet floor sign warning pedestrians about the dripping condensation.

Houston argues that Caro failed to present evidence creating a fact issue on its actual knowledge of a dangerous condition by focusing exclusively on the water drips on the floor.  We instead conclude that the dangerous condition at issue here is not just the water drips on the floor, but encompasses the air conditioning vent producing condensation, which in turn drips on the floor, thereby endangering pedestrians walking in the Terminal D/E APM area.  We conclude that the record evidence, when viewed under the appropriate standard of review, creates a fact issue on Houston's actual knowledge of this existing dangerous condition in Terminal D/E APM.  *See City of Groves v. Lovelace*, No. 09-21-00281-CV, 2023 WL 2533188, at *8 (Tex. App.—Beaumont Mar. 16, 2023, no pet.) (mem. op.) ("Stated another way, the plaintiffs needed to prove that some City employee or a City official realized either from the way the tree looked or from being notified by someone that a dead tree that was in danger of falling was in the City's right-of-way on Jackson Boulevard before Scott was injured by the tree.").

We turn to the next element, Caro's lack of knowledge of the dangerous condition.  Here, the only evidence in the record on this topic was Caro's deposition testimony that she was unaware of the dripping vent or the water drips on the floor until after she slipped and fell.  (CR175, 195)  We conclude this evidence, once again when viewed under the appropriate standard of review, creates a fact issue on her lack of knowledge of the dangerous condition.  *See City of Houston v. Crawford*, No. 01-18-00179-CV, 2018 WL 4868306, at *5 (Tex. App.—Houston [1st Dist.] Oct. 9, 2018, no pet.) (mem. op.) (affirming denial of governmental unit's plea to the jurisdiction because there was a fact issue on the plaintiff's lack of knowledge regarding the dangerous condition).

8

Finally, we turn to the final challenged element, Houston's duty of ordinary care. When a governmental unit has actual knowledge of a dangerous condition and the plaintiff does not, the governmental unit owes a duty to either warn of the hidden dangers or to make the condition safe. *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008). Once again examining the record evidence under the appropriate standard of review, we conclude there is a fact issue on whether Houston breached its duty to Caro. Here, the evidence shows that Houston attempted to eliminate the condensation problem by changing the metal air conditioning vents in other areas of IAH to wooden vents, but it had not done so in the area where Caro slipped and fell. In addition, while Houston points to evidence from its Custodial Supervisor that the water spill had been cleaned up the day before Caro's fall, there is other evidence in the record that water was dripping from the vent immediately after Caro fell, and there was no warning sign or barricade around the splash area beneath the air conditioning vent.

Because there is a fact issue on each of the three elements challenged by Houston, we conclude that the trial court did not err when it denied Houston's plea to the jurisdiction. We overrule Houston's single issue on appeal.

## CONCLUSION

Having overruled Houston's issue on appeal, we affirm the trial court's order and remand to the trial court for further proceedings.

/s/    Jerry Zimmerer
       Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

9